1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

9

FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11 MARK WAYNE GRAY,

No.  2:13-cv-0564-KJM-EFB P

12               Petitioner,

13       vs.

14 BRENDA M. CASH,

FINDINGS AND RECOMMENDATIONS

15               Respondent.

16

17       Petitioner is a state prisoner proceeding through counsel with a petition for a writ of

18 habeas corpus pursuant to 28 U.S.C. § 2254.  He challenges a judgment of conviction entered

19 against him on June 30, 2009, in the Shasta County Superior Court, on charges of spousal rape of

20 an unconscious or sleeping victim, genital penetration with a foreign object through use of

21 controlled substances, four counts of first degree residential burglary, attempted first degree

22 residential burglary, sexual battery, stalking, attempted stalking, and numerous misdemeanors.[1]

23

24       [1]   Petitioner was convicted of the following misdemeanors: two counts of sexual battery
(Pen.Code, § 243.4, subd. (e)(1) (counts 10 & 24)), dissuading a witness/victim from prosecuting

25 a crime (id., § 136.1, subd. (b)(2) (count 20)), contempt of court/disobeying a court order (id., §
166, subd. (a)(4) (count 22)), three counts of petty theft (id., §§ 484, subd. (a), 488 (counts 24, 25,

26 26)), eight counts of invading privacy by means of video (id., § 647, subd. (j)(3) (counts 11–18)),
and peeking (id., § 647, subd. (i) (count 19)).  A misdemeanor conviction for inducing false

27 testimony (id., § 166, subd. (a)(1) (count 21)) was dismissed on the court's own motion for lack

28 of a factual basis.

1

1   Petitioner received a sentence of 20 years and 2 months in state prison.  He seeks federal habeas

2   relief on the following grounds: (1) a violation of the attorney client privilege during his trial

3   violated his federal constitutional rights; (2) the evidence introduced at his trial was insufficient to

4   support the jury's factual finding that he administered a controlled substance in the commission

5   of the offense of genital penetration with a foreign object; and (3) the decision of the California

6   Court of Appeal on one of his appellate claims violated his Sixth Amendment right to a jury trial.

7        Upon careful consideration of the record and the applicable law, the undersigned

8   recommends that petitioner's application for habeas corpus relief be granted on petitioner's

9   insufficiency of the evidence claim and denied with respect to all other claims.

10  **I. Background**

11       In its unpublished memorandum and opinion affirming petitioner's judgment of

12  conviction on appeal, the California Court of Appeal for the Third Appellate District provided the

13  following factual summary:

> Defendant Mark Wayne Gray met his wife S. when she was only 17 years old.  The couple had three children, but the marriage fell apart and she moved out of their house.  Rather than get on with his life, defendant turned hers into a living hell.  He embarked on a course of conduct calculated to terrify her, drive her crazy, or both.  As a result of misdeeds committed both before and after the separation, defendant was convicted by a jury of the felonies of spousal rape of unconscious or sleeping victim (Pen.Code, § 262, subd. (a)(3)), genital penetration with a foreign object (*id.*, § 289, subd. (d)) through use of a controlled substance (*id.*, § 12022.75), four counts of first degree residential burglary (*id.*, § 459), attempted first degree residential burglary (*id.*, §§ 664, 459), sexual battery (*id.*, § 243.4, subd. (e)(1)), stalking (*id.*, § 646.9, subd. (a)) and attempted stalking (*id.*, §§ 664/646.9, subd. (b)), as well as a host of misdemeanors.  He was sentenced to an aggregate term of 20 years and two months in state prison.
>
> Defendant appeals, arguing that the trial court erred in denying his pretrial motion to suppress evidence.  He also challenges several other convictions on procedural grounds.  In the published parts of this opinion, we reject two of his arguments: (1) that the trial court committed reversible error in ordering disclosure to the prosecutor of documents defendant brought with him to the witness stand, over his objection that they were protected by the attorney-client privilege; and (2) that the enhancement for administering a controlled substance for the purpose of committing sexual penetration (Pen.Code, § 12022.75) must be vacated because the prosecution introduced no evidence that "Ambien" was a controlled substance.

2

As for the rest of defendant's claims, we find no reversible trial error, but shall strike two of the misdemeanor convictions, modify the sentence in minor respects, and otherwise affirm the judgment.

**FACTUAL BACKGROUND**

**Prosecution's Case**

S. and defendant met when she was 17 years old and he was 30. They dated, moved in together, got married in 1999, and had three children.

During their marriage defendant began to videotape them having sex, which made S. uncomfortable.   A couple of times S. discovered that he had been secretly videotaping her.  However, when she confronted him with it, he became angry.

In the fall of 2006, S. began to feel the marriage was not working out.  In early 2007, she enrolled in some college classes, which made defendant unhappy.

One night in August 2007, an incident occurred where, after S. rebuffed defendant's sexual advances, he pinned her down on the bed so she could not breathe and assaulted her sexually.  She fled the house, stayed at a friend's place and eventually moved into her own residence.[2]

Once S. moved into her own house in September 2007, she told defendant he was not allowed inside.  From then on, unusual and suspicious events began to occur.

The tires in S.'s minivan kept going flat, despite the efforts of the car shop to reinflate them.  In November, roofing nails were found in the center of her tires, and in December, two new tires that she had received for her birthday were found slashed.

Various small items that S. kept in her minivan turned up missing, such as work shirts, CD's (compact discs), a phone charger and various items of personal clothing.  Lights inside the van that she was sure she had turned off were turned back on.

Unusual occurrences also began happening around S.'s house.  The electrical circuit breaker box was turned off mysteriously.  Several articles of clothing were found with slits in them.   Decorative pumpkins put outside the house repeatedly disappeared.   On Thanksgiving Day 2007, the main water valve to the house was turned off.  Single shoes of S.'s were missing and numerous items of personal clothing had disappeared.   All of the thefts were reported to the police.

After the pumpkins kept disappearing, S. bought a security camera and installed it outside her home.  The camera caught a videotape of defendant near her home at a time when she and the children were

---

[2]   At the time of trial, S. and defendant were still legally married.

away.  In December 2007, a PC-based video surveillance system S. had purchased was stolen out of her garage.

A private investigator hired by S. recorded two surveillance videos showing defendant entering her locked minivan and removing items from it, including panties, a purse, and several CD's.  One night in April 2008, S. heard a loud noise upstairs and discovered that a window had been broken.  In June 2008, S. suspected that someone had placed spyware on her cell phone.  Police subsequently recovered from defendant's house video footage indicating that he had scrolled through S.'s contacts on her cell phone with a gloved hand.

These events left S. shaken and afraid.  On September 12, 2008, she obtained a restraining order against defendant.

On September 18, 2008, police obtained an arrest warrant for defendant and a search warrant for his house and car.  When the officer read charges of theft or burglary, defendant responded that any items he took were under the belief they were his property.

In the trunk of defendant's car, police found S.'s CD's that had been reported stolen.  Under the floor mat, they found a duplicate key to S.'s minivan.

Inside defendant's house, police found a set of keys to S.'s house before she had the locks changed.  They also found numerous items S. had reported stolen from her home, including the single shoes that were taken from S.'s closet and her cell phone charger.  During the same search, police discovered a VHS tape showing defendant having sex with S. while she was sleeping or unconscious.  Numerous other videotapes taken by a hidden camera were discovered, some containing footage showing S. in various states of undress, and another showing defendant digitally penetrating her vagina while she was asleep.[3]  Officers also found surreptitiously filmed videotapes depicting defendant's next door neighbors engaging in sexual activity.

Defendant's criminal misconduct did not end with his arrest.  Defendant used his mother as an intermediary to tell S. that he would agree to whatever child custody arrangement she wanted if she would drop the charges against him.  A secretly taped jailhouse conversation indicated defendant and his mother collaborated in trying to avoid a subpoena so that she would not have to testify at trial.

Defendant's former cellmate, Courtney Jones Botta, testified that defendant offered him money to commit acts of petty theft and vandalism against S.'s property.  Defendant wanted these acts done while he was in custody, so as to make it appear he was not the perpetrator of the charged crimes.

---

[3]  A bottle of sleeping pills with the trade name "Ambien" was also recovered.  Some of the pills had been crushed into a powder and placed in a paper bindle.

4

**Defense**

Defendant took the stand in his own defense. He testified that he and his wife had a "great sex life." He admitted he used a camera to videotape S. in states of undress and recorded footage of them having sex, but insisted that "90 percent of the time" S. knew about it and did not object.

Defendant stated that he started secretly videotaping S. in June 2007 after their relationship became rocky, because she started acting "suspicious" and "paranoid," like she was hiding something from him. He also believed she was spending time with other men and taking some of his things.

Defendant explained the digital penetration video by stating that he had been massaging his wife to see if he could motivate her to have sex, and was shocked to realize that she had fallen asleep. He videotaped the episode to prove to her what a sound sleeper she was. He denied giving her narcotics or sleep medication. He claimed that he took the Ambien himself to help him fall asleep.

Explaining the video that formed the basis of the spousal rape by intoxication charge, defendant claimed that he filmed S. asleep, paused the video to obtain her consent to have sex with him, and then restarted the filming. He insisted his wife was awake during the entire act of intercourse.

Defendant denied ever breaking into S.'s house, stealing items of personal property, or committing acts of vandalism directed at her. He admitted taking things out of her van, but claimed he was exercising his community property rights. He also admitted videotaping his neighbors having sex on several occasions. He claimed that they were having sex in their backyard, and was concerned that his children would see them. The purpose of the taping was to gather evidence for the police.

*People v. Gray*, 124 Cal.Rptr.3d 625, 626-29 (2011), *as modified on denial of reh'g* (May 19, 2011).

After the California Court of Appeal affirmed his judgment of conviction, petitioner filed a petition for rehearing. ECF No. 1-1 at 41. The Court of Appeal modified its opinion to correct a typographical error but otherwise denied rehearing. *Id.* at 60. Petitioner subsequently filed a petition for review in the California Supreme Court. The Supreme Court summarily denied review and ordered that the opinion of the Court of Appeal not be officially published. *Id.* at 63. Justice Kennard was of the opinion that the petition should be granted. *Id.*

/////

/////

1    Petitioner filed a petition for certiorari in the United States Supreme Court on November

2    8, 2011.  ECF No. 1 at 15.  The question presented for review concerned the scope of a search

3    warrant executed by the police.  *Id.*  That petition was summarily denied.  ECF No. 1-1 at 65.

4    **II.  Standards of Review Applicable to Habeas Corpus Claims**

5    An application for a writ of habeas corpus by a person in custody under a judgment of a

6    state court can be granted only for violations of the Constitution or laws of the United States.  28

7    U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or

8    application of state law.  *See Wilson v. Corcoran*, 562 U.S. 1,5 (2010); *Estelle v. McGuire*, 502

9    U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

10   Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas

11   corpus relief:

12   An application for a writ of habeas corpus on behalf of a
     person in custody pursuant to the judgment of a State court shall not
13   be granted with respect to any claim that was adjudicated on the
     merits in State court proceedings unless the adjudication of the
14   claim -

15   (1) resulted in a decision that was contrary to, or involved
     an unreasonable application of, clearly established Federal law, as
16   determined by the Supreme Court of the United States; or

17   (2) resulted in a decision that was based on an unreasonable
     determination of the facts in light of the evidence presented in the
18   State court proceeding.

19   For purposes of applying § 2254(d)(1), "clearly established federal law" consists of

20   holdings of the United States Supreme Court at the time of the last reasoned state court decision.

21   *Thompson v. Runnels*, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing *Greene v. Fisher*, ___ U.S.

22   ___, 132 S.Ct. 38 (2011); *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (citing *Williams v.*

23   *Taylor*, 529 U.S. 362, 405-06 (2000)).  Circuit court precedent "may be persuasive in determining

24   what law is clearly established and whether a state court applied that law unreasonably." *Stanley*,

25   633 F.3d at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)).  However, circuit

26   precedent may not be "used to refine or sharpen a general principle of Supreme Court

27   jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." *Marshall*

28   *v. Rodgers*, 133 S. Ct. 1446, 1450 (2013) (citing *Parker v. Matthews*, 132 S. Ct. 2148, 2155

6

1  (2012) (per curiam)).  Nor may it be used to "determine whether a particular rule of law is so

2  widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court,

3  be accepted as correct.  *Id.*  Further, where courts of appeals have diverged in their treatment of

4  an issue, it cannot be said that there is "clearly established Federal law" governing that issue.

5  *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

6        A state court decision is "contrary to" clearly established federal law if it applies a rule

7  contradicting a holding of the Supreme Court or reaches a result different from Supreme Court

8  precedent on "materially indistinguishable" facts.  *Price v. Vincent*, 538 U.S. 634, 640 (2003).

9  Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the

10  writ if the state court identifies the correct governing legal principle from the Supreme Court's

11  decisions, but unreasonably applies that principle to the facts of the prisoner's case. [4]  *Lockyer v.*

12  *Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360 F.3d 997, 1002

13  (9th Cir. 2004).  In this regard, a federal habeas court "may not issue the writ simply because that

14  court concludes in its independent judgment that the relevant state-court decision applied clearly

15  established federal law erroneously or incorrectly.  Rather, that application must also be

16  unreasonable."  *Williams*, 529 U.S. at 412.  *See also Schriro v. Landrigan*, 550 U.S. 465, 473

17  (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent

18  review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'").

19  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as

20  'fairminded jurists could disagree' on the correctness of the state court's decision."  *Harrington v.*

21  *Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

22  Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner

23  must show that the state court's ruling on the claim being presented in federal court was so

24  lacking in justification that there was an error well understood and comprehended in existing law

25  beyond any possibility for fairminded disagreement."  *Richter*, 562 U.S. at 103.

26  _____

27        [4]  Under § 2254(d)(2), a state court decision based on a factual determination is not to be
overturned on factual grounds unless it is "objectively unreasonable in light of the evidence
presented in the state court proceeding."  *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*,

28  384 F.3d 628, 638 (9th Cir. 2004)).

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. *Delgadillo v. Woodford*, 527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Richter*, 562 U.S. at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." *Id.* at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. *Johnson v. Williams*, ___ U.S. ___, ___, 133 S.Ct. 1088, 1091 (2013).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). *Stanley*, 633 F.3d at 860; *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).  "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. *Stancle v. Clay*, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012).  While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief."  *Richter*, 562 U.S. at 98.  This court "must determine what arguments or theories ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court."  *Id.* at 102.  The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'"  *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (quoting *Richter*, 562 U.S. at 98).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo.  *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th Cir. 2003).

**III.  Petitioner's Claims**

**A.  Violation of Attorney-Client Privilege**

In his first ground for federal habeas relief, petitioner claims that his Fifth Amendment right against self-incrimination, his Sixth Amendment rights to counsel and a jury trial, and his Fourteenth Amendment right to due process were violated when the prosecutor was allowed to take possession and make use of written material that petitioner brought to the witness stand to refresh his recollection of the relevant events.  ECF No. 1 at 12, 13.[5]  Petitioner claims that in requiring him to turn over this material to the prosecutor, the trial judge "compelled the disclosure of attorney-client privileged confidential communications during the trial."  *Id.* at 16.  Petitioner also argues that the California Court of Appeal made an erroneous factual finding that the material taken from petitioner consisted of "notes being employed by a witness" instead of

/////

---

[5]   Page number citations such as this one are to the page numbers reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

1   protected attorney-client communications.  *Id.* at 33.  He argues the judge's ruling had a

2   substantial and injurious effect on the verdict.[6]  *Id.*

3               **1. State Court Decision**

4           The California Court of Appeal denied this claim in a lengthy decision that was originally

5   certified for partial publication.  The court explained the background to the claim and its analysis

6   thereon, as follows:

> Defendant argues that it was reversible error for the trial court to
> order him to surrender 18 pages of notes that he brought with him
> to the witness stand.  He asserts that such compelled disclosure was
> a violation of the attorney-client privilege, and that the prosecutor's
> use of the notes severely damaged his defense.  We do not agree.
>
> **A. Factual Background**
>
> In the middle of defendant's testimony, the prosecutor asked for a
> bench conference.  Out of the presence of the jury, the trial judge,
> the Honorable Monica Marlow, stated on the record that defendant
> had taken certain notes with him to the witness stand and that the
> prosecutor had asked to review them.  Defense counsel's initial
> reaction was, "That would be fine.  I don't know what he's taken
> with him."  Defendant, however, asked, "What if I have a problem
> with that?"  A recess was then taken to allow defendant to consult
> with his attorney.
>
> At the conclusion of the conference, defense counsel Amy Babbits
> explained that the notes were communications defendant made with
> his prior attorney and with her.  Judge Marlow asked why
> defendant had the notes with him on the witness stand, to which
> Attorney Babbits had no ready reply.  The judge then ordered the
> notes placed in a sealed envelope until an Evidence Code section
> 402[7] hearing could be held regarding their disclosure.  Defendant
> objected to this turn of events, stating "I would like my notes.  I've
> worked on the notes for eight months."  Judge Marlow asked
> Attorney Babbits whether she explained to her client that if he took

---

6   Respondent argues that petitioner's Fifth Amendment claim is not exhausted.  ECF No.
15 at 20 n.1.  Generally, a state prisoner must exhaust all available state court remedies either on
direct appeal or through collateral proceedings before a federal court may consider granting
habeas corpus relief.  28 U.S.C. § 2254(b)(1).  However, an application for a writ of habeas
corpus "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the
remedies available in the courts of the State."  28 U.S.C. § 2254(b)(2).  *See Cassett v. Stewart*,
406 F.3d 614, 624 (9th Cir. 2005).  Assuming *arguendo* that petitioner's Fifth Amendment claim
is unexhausted, this court recommends that it be denied on the merits pursuant to 28 U.S.C.
§ 2254(b)(2).

7   Undesignated statutory references are to the Evidence Code.

10

the notes to the witness stand the prosecutor would have a right to review them.  She responded, "I've told him that.  Yes."

Judge Marlow explained to defendant that if he chose to have the notes with him on the witness stand, they would be "discoverable to the prosecution."  Defendant replied, "That damages my case."  The judge stated that the decision was his, but if he chose to take the notes with him, "you may end up with a court ruling you don't agree with . . . ."  Defendant responded that he would testify without the notes.

Subsequently, a section 402 hearing was held on the discoverability of the notes.[8]  The prosecution's investigator testified that he saw defendant consulting the notes "at least four times" during his testimony.  Defendant admitted that he took the notes to the stand, but claimed that he referred to them only a couple of times, to check on dates.

Attorney Babbits took the position that the documents were privileged attorney-client communications and were therefore protected from disclosure.  The prosecutor argued that by taking the documents with him to the witness stand to refresh his memory, defendant had waived any privilege and subjected them to discovery under section 771.

When his trial testimony resumed, the prosecutor elicited defendant's admission that he had taken the notes with him to the witness stand the previous day.  At a resumption of the section 402 hearing, defendant testified that the notes were "letters and summaries to [his] attorney" since November of 2008.  He admitted that he reviewed them to refresh his recollection just prior to testifying.   Under questioning by Attorney Babbits, defendant stated that the notes were reviewed during conversations between him and his present and former attorneys, that some were prepared at his attorney's request, and that some were written by his attorney.

Judge Marlow then took a recess to view the documents in camera.  Afterward, she announced that she was satisfied they contained no attorney work product and thus were not protected by that privilege.  Judge Marlow also determined that the documents were "simply a summary of [defendant's] recollection of events," the primary purpose of which was to refresh his memory.  The court concluded that, even though the notes might have been protected initially as attorney-client communication, defendant had waived the privilege by bringing them to the witness stand to refresh his memory during his trial testimony.  Accordingly, the court ordered disclosure of the notes to the prosecutor.

In a later exchange, Attorney Babbits clarified that she did not object to a one-page summary that defendant concededly looked at

---

[8]  The notes hereinafter referred to consist of a six-page document and a 12–page document.  Each begins with the salutation "Dear Josh," a reference to defendant's former attorney, Josh Lowery.

11

while testifying, but did object, on grounds of attorney-client privilege, to disclosure of the six- and 12 - page documents he had brought with him to the witness stand.   Judge Marlow ruled, however, that under section 771, the prosecutor had a right to review any writing defendant actually used to refresh his memory.

During cross-examination, the prosecutor used the notes to elicit defendant's admission that he lied to his attorney when he wrote that he never saw the video of someone scrolling with S.'s cell phone.  With respect to the spousal rape charge, the prosecutor got defendant to admit that the notes failed to mention his current claim that he paused the video to obtain S.'s consent before having intercourse with her.

**B. Analysis**

 Defendant contends that the trial court violated the attorney-client privilege by allowing the prosecutor to see the notes he used while testifying.  He asserts that the documents were absolutely privileged as confidential communications and that, notwithstanding section 771, the mere fact that he took them to the witness stand did not constitute a waiver of the privilege.

Section 954 states in relevant part: "Subject to Section 912 and except as otherwise provided in this article, the client, whether or not a party, has a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer . . . ."  (§ 954, 1st par.)  Section 912 states in pertinent part: "[T]he right of any person to claim a privilege provided by Section 954 . . . is waived with respect to a communication protected by the privilege if any holder of the privilege, without coercion, has disclosed a significant part of the communication or has consented to disclosure made by anyone.  *Consent to disclosure is manifested by* any statement or *other conduct of the holder of the privilege indicating consent to the disclosure*, including failure to claim the privilege in any proceeding in which the holder has the legal standing and opportunity to claim the privilege."  (§ 912, subd. (a), italics added.)

Section 771 states, with inapplicable exceptions, that "if a witness, either while testifying or prior thereto, uses a writing to refresh his memory with respect to any matter about which he testifies, *such writing must be produced at the hearing at the request of an adverse party* and, unless the writing is so produced, the testimony of the witness concerning such matter shall be stricken."  (§ 771, subd. (a), italics added.)

We shall assume for purposes of argument that the two documents in question were confidential communications between defendant and his attorneys and thus presumptively privileged.  The decisive question is whether Judge Marlow correctly ruled that defendant's use of these notes to refresh his memory constituted a waiver of that privilege.

12

Cases addressing the interplay between section 771 and the attorney-client privilege are few. In *Kerns Construction Co. v. Superior Court* (1968) 266 Cal.App.2d 405, 72 Cal.Rptr. 74, the defendant's employee used certain investigation and accident reports to refresh his testimony at a deposition. When the plaintiff's attorney demanded disclosure of the reports, defense counsel objected on grounds of attorney-client privilege. (*Id.* at pp. 408–409, 72 Cal.Rptr. 74.) The Court of Appeal, Fourth Appellate District, Division Two, held that the reports were properly subject to disclosure. "Having no independent memory from which he [the witness] could answer the questions; having had the papers and documents produced by [defendant] Gas Co.'s attorney for the benefit and use of the witness; [and,] having used them to give the testimony he did give, it would be unconscionable to prevent the adverse party from seeing and obtaining copies of them. We conclude there was a waiver of any privilege which may have existed." (*Id.* at p. 410, 72 Cal.Rptr. 74.)

However, in *Sullivan v. Superior Court* (1972) 29 Cal.App.3d 64, 105 Cal.Rptr. 241, (*Sullivan*), a conference between the plaintiff and her attorney regarding the facts of an automobile accident was tape recorded and then transcribed. The plaintiff reviewed the transcript to refresh her memory before giving deposition testimony. After ascertaining that the plaintiff had used it to refresh her memory, defense counsel demanded disclosure of the transcript under section 771. (*Sullivan*, at p. 67, 105 Cal.Rptr. 241.)

The Court of Appeal, First Appellate District, Division Four, held that the privilege was not waived under these circumstances. Although it recognized an apparent conflict between section 771, which requires the production of all writings used to refresh testimony, and section 954, which protects confidential communications between attorney and client (*Sullivan, supra*, 29 Cal.App.3d at p. 72, 105 Cal.Rptr. 241), the court, as a matter of statutory interpretation, held that the word "writing" in section 771 was never intended to include a verbatim transcript of a confidential interview between attorney and client with respect to the core issues in the case (*Sullivan*, at p. 73, 105 Cal.Rptr. 241). In light of the "age and sanctity" of the privilege, the *Sullivan* court found it doubtful that the Legislature intended the word "writing" in section 771 to cover such a unique document as a transcript of a confidential attorney-client conversation. (*Sullivan*, at pp. 73–74, 105 Cal.Rptr. 241.)

Much more recently, in *People v. Smith* (2007) 40 Cal.4th 483, 54 Cal.Rptr.3d 245, 150 P.3d 1224, the California Supreme Court had no trouble deciding that the mandate of section 771 prevailed over a claim of psychotherapist-patient privilege. There, defense-retained psychologist, Dr. Oliver Glover, administered numerous psychological tests to the defendant and used the results to refresh Dr. Glover's recollection before testifying. The prosecution moved to discover Dr. Glover's notes, raw data and test materials under sections 771 and 721, subdivision (a), criterion (3) (providing that an expert witness may be fully cross-examined as to "the matter upon which his or her opinion is based and the reasons for his or

13

her opinion"). (*People v. Smith, supra*, 40 Cal.4th at pp. 507–508, 54 Cal.Rptr.3d 245, 150 P.3d 1224.)

*Smith* held that the foregoing statutes required production of the materials. Noting that Dr. Glover relied on the documents to refresh his memory and to formulate his opinion, the Supreme Court ruled that the trial court "did not abuse its discretion" in ruling that the prosecution was entitled to disclosure of the doctor's tests and notes. (*People v. Smith, supra*, 40 Cal.4th at pp. 508–509, 54 Cal.Rptr.3d 245, 150 P.3d 1224.)

Applying the foregoing principles and interpreting the relevant statutes, we uphold the trial court's determination that the attorney-client privilege was waived under the circumstances here.

It is the function of the trial court to resolve any factual dispute upon which a claim of privilege depends (*Lipton v. Superior Court* (1996) 48 Cal.App.4th 1599, 1619, 56 Cal.Rptr.2d 341) and the court's resolution of such factual conflicts will not be disturbed if supported by substantial evidence (*Sierra Vista Hospital v. Superior Court for San Luis Obispo County* (1967) 248 Cal.App.2d 359, 364–365, 56 Cal.Rptr. 387). Moreover, discovery orders are reviewed for abuse of discretion. (*People ex rel. Lockyer v. Superior Court* (2004) 122 Cal.App.4th 1060, 1071, 19 Cal.Rptr.3d 324.)

Unlike the situation in *Sullivan*, the prosecutor was not seeking to discover the contents of a pretrial attorney-client communication. She merely sought notes that were being employed by a witness during the course of his testimony.

Section 954 declares that the attorney-client privilege may be waived by any conduct on the part of the privilege holder manifesting consent to the disclosure. Evidence adduced at the section 402 hearing revealed that defendant's "Dear Josh" letters actually consisted primarily of notes he prepared in computer class during his incarceration. They contained a count-by-count response to the criminal charges. Defendant brought the documents with him to the witness stand, referred to them on several occasions while testifying, and admittedly used them to refresh his memory.

A person "who exposes any significant part of a communication in making his own case waives the privilege with respect to the communication's contents bearing on discovery, as well." (*Samuels v. Mix* (1999) 22 Cal.4th 1, 20–21, fn. 5, 91 Cal.Rptr.2d 273, 989 P.2d 701; *see also* § 912, subd. (a); *People v. Barnett* (1998) 17 Cal.4th 1044, 1124, 74 Cal.Rptr.2d 121, 954 P.2d 384.) By bringing the notes to the witness stand and using them to refresh his memory, defendant made their contents fair game for examination and inquiry. Such conduct is inconsistent with an intent to preserve them as confidential attorney-client communications.

"The doctrine of waiver of the attorney-client privilege is rooted in notions of fundamental fairness. Its principal purpose is to protect against the unfairness that would result from a privilege holder

selectively disclosing privileged communications to an adversary, revealing those that support the cause while claiming the shelter of the privilege to avoid disclosing those that are less favorable." (*Tennenbaum v. Deloitte & Touche* (9th Cir.1996) 77 F.3d 337, 340–341, citing 8 Wigmore, *Evidence* (McNaughton ed. 1961) § 2327, p. 636.)

It would be unjust to allow a party to use written materials on the witness stand to enable him to present his case to the jury and then hide behind a claim of attorney-client privilege when his adversary seeks to review the same materials.[9]   The trial court reasonably found that, by using the documents as a memory-refreshing device and visual aid in presenting his testimony, defendant waived any claim of attorney-client privilege.  Accordingly, the court properly required their disclosure to the prosecution pursuant to the mandate of section 771.  We find no abuse of discretion in the disclosure order.[10]

*People v. Gray*, No. C062668, 124 Cal.Rptr.3d 625, 626-29 (2011).

### 2. **Analysis**

The decision of the California Court of Appeal on petitioner's claim regarding the violation of the attorney-client privilege turns on an analysis of California caselaw and statutes. As explained above, a federal writ is not available for alleged error in the interpretation or application of state law.  *Wilson*, 562 U.S. at 5; *Estelle*, 502 U.S. at 67-68.  To the extent petitioner is alleging that the trial court violated state law in ordering him to turn over his notes to the prosecutor, his claims are not cognizable in this federal habeas action.  This would include whether petitioner validly waived the attorney-client privilege under state law by relying on

---

[9]   Section 771 provides an alternative – striking defendant's testimony – but that apparently was not requested by the parties.

[10]   Defendant also claims the trial court's in camera review was itself error, citing *Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 101 Cal.Rptr.3d 758, 219 P.3d 736.  In *Costco*, the Supreme Court noted that section 915, subdivision (a) prohibits information claimed to be protected by the attorney-client privilege from disclosure to a presiding officer.  (*Costco*, at p. 736, 101 Cal.Rptr.3d 758, 219 P.3d 736.)  Although the statute allows in camera review to enable a trial court to rule on a claim of work product privilege, it has no counterpart with respect to the attorney-client privilege.  Thus, the trial court erred by conducting an in camera review of the subject attorney-client letter.  (*Id.* at pp. 736–737, 101 Cal.Rptr.3d 758, 219 P.3d 736.) Unlike the situation in *Costco*, Judge Marlow conducted an in camera review for the stated purpose of ascertaining whether any attorney work product privilege applied, which is expressly permitted by section 915, subdivision (b).  Defense counsel lodged no objection to the court's procedure.  Accordingly, any claim of error has been forfeited.

15

1 material he brought to the witness stand.  The only claims that are properly before this court are

2 claims alleging federal constitutional error.  The court will address those claims below.

3      Citing *Weatherford v. Bursey*, 429 U.S. 545 (1977), petitioner claims that being forced to

4 turn over attorney-client material to the prosecutor violated his Sixth Amendment right to

5 counsel.  ECF No. 1 at 35.  In *Weatherford*, an undercover agent attended sessions between the

6 defendant and the defendant's attorney at the invitation of defense counsel, who believed that the

7 agent was also being prosecuted for the same offense.  Although the agent sat in on these

8 sessions, he did not disclose any information he learned at the sessions to his superiors or to the

9 prosecution.  The Court of Appeals for the Fourth Circuit held that the agent's actions violated the

10 Sixth Amendment because "whenever the prosecution knowingly arranges and permits intrusion

11 into the attorney-client relationship the right to counsel is sufficiently endangered to require

12 reversal and a new trial." *Weatherford*, 429 U.S. at 549, 97 S.Ct. 837 (quoting *Bursey v.*

13 *Weatherford*, 528 F.2d 483, 486 (4th Cir. 1975)).  The Supreme Court reversed the Fourth

14 Circuit, holding that a Sixth Amendment violation in this context requires not only intrusion into

15 the attorney-client privilege but also a showing of prejudice.  Later, in *Cluchette v. Rushen*, 770

16 F.2d 1469, 1471 (9th Cir. 1985), the Ninth Circuit explained:

> 17     Standing alone, the attorney-client privilege is merely a rule of
> 18 evidence; it has not yet been held a constitutional right.  *See Maness v. Meyers*, 419 U.S. 449, 466 n. 15, 95 S.Ct. 584, 595 n. 15, 42 L.Ed.2d 574 (1975); *Beckler v. Superior Court*, 568 F.2d 661, 662
> 19 (9th Cir.1978).  In some situations, however, government interference with the confidential relationship between a defendant
> 20 and his counsel may implicate Sixth Amendment rights.  *See, e.g., Weatherford v. Bursey*, 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30
> 21 (1977).  Such an intrusion violates the Sixth Amendment only when
> it substantially prejudices the defendant.  *United States v. Irwin*,
> 22 612 F.2d 1182, 1186-87 (9th Cir.1980); *see United States v. Glover*, 596 F.2d 857, 863-64 (9th Cir.), *cert. denied*, 444 U.S. 860, 100
> 23 S.Ct. 124, 62 L.Ed.2d 81 (1979).

24 *Cluchette v. Rushen*, 770 F.2d 1469, 1471 (9th Cir. 1985).

25     Petitioner also cites *United States v. Danielson*, 325 F.3d 1054 (9th Cir. 2003), in support

26 of his federal constitutional claims.[11]  ECF No. 1 at 38.  In *Danielson*, a criminal defendant

27  

---

28     [11]  Petitioner mis-labels this case *United States v.* **Dennis.**  *Id.*  However, it is clear that he is referring to the *Danielson* case.

16

revealed his trial strategy to a confidential government informant.  Although the government had

not directed the informant to obtain this information, it later encouraged the informant to keep

talking to the defendant and paid some of his expenses while he continued to gather information.

*Danielson*, 325 F.3d at 1060.  Under these circumstances, the Ninth Circuit found that the

government had improperly intruded into the attorney-client relationship.  Citing the Supreme

Court decision in *Weatherford*, the court remanded the case to the trial court to determine whether

petitioner had suffered "substantial" prejudice from the government's improper actions.  The

Ninth Circuit explained:

> Substantial prejudice results from the introduction of evidence
> gained through the interference against the defendant at trial, from
> the prosecution's use of confidential information pertaining to
> defense plans and strategy, and from other actions designed to give
> the prosecution an unfair advantage at trial.

*Id.* at 1069.

Petitioner argues that, in this case, "the prosecutor was able to utilize the attorney-client

communications to damage the credibility of petitioner in front of the jury and it was that

prejudicial conduct which caused the constitutional violations complained of here."  ECF No. 1 at

35.  Petitioner points out that the prosecutor used the confiscated material to cross-examine him,

eliciting the fact that he had lied to his attorneys and his mother, and had failed to tell his attorney

that he paused the videotape in order to secure his wife's consent to sexual intercourse.  *Id.* at 39-

40.  He contends that the prosecutor's actions, in effect, "invaded the defense camp."  *Id.* at 43.

Petitioner asks:

> What can be more injurious to a defendant's case than having the
> prosecutor holding in her hand a sheaf of 18 pages of letters from
> client to attorney and cross-examining the defendant, Mr. Gray, on
> the contents of those letters and getting him to admit that he lied to
> his attorney and that he lied even to his own mother about material
> facts of the case.

*Id.* at 44.

Petitioner also notes that the prosecutor referred to the notes in his closing argument and

read aloud from one of petitioner's letters to his counsel, comparing the statements contained

therein with petitioner's trial testimony.  *Id.* at 39-40.  He argues:

1
2
3
4

> Here, the state deliberately intruded into petitioner's privileged relationship with his attorneys.  As in other federal cases, the government here, unwisely but actively, infiltrated the defense, not by planting informants but, incomprehensibly with the approval of a California state court, intercepting and actually seizing and using in court against petitioner, confidential communications between petitioner and his attorneys.

5   *Id.* at 36-37.

6       Finally, petitioner argues that the California Court of Appeal made a factual misstatement

7   when it found that he brought the notes to the witness stand and used them to refresh his memory.

8   He contends that, on the contrary, the court and prosecutor agreed that petitioner had not read

9   from or viewed the documents during his testimony, but only before he took the witness stand.

10  *Id.* at 42.

11      As explained above, a federal habeas court must deny habeas relief with respect to any

12  claim adjudicated on the merits in a state court proceeding unless the proceeding "resulted in a

13  decision that was contrary to, or involved an unreasonable application of, clearly established

14  Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision

15  that was based on an unreasonable determination of the facts in light of the evidence presented in

16  the State court proceeding."  28 U.S.C. § 2254(d)(1), (2).  Clearly established Federal law under

17  § 2254(d)(1) is "the governing legal principle or principles set forth by the Supreme Court at the

18  time the state court renders its decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).  When

19  a Supreme Court decision does not 'squarely address[ ] the issue in th[e] case . . . it cannot be

20  said, under AEDPA, there is 'clearly established' Supreme Court precedent addressing the issue

21  before us, and so we must defer to the state court's decision."  *Moses v. Payne*, 555 F.3d 742, 754

22  (9th Cir. 2009).  In other words, under AEDPA a federal habeas court must defer to the state

23  court's decision if a Supreme Court decision fails to "squarely address" the issue in the case or to

24  establish a legal principle that "clearly extends to a new context."  *Varghese v. Uribe*, 736 F.3d

25  817, 820 (9th Cir. 2013). *See also Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004) ("If no

26  Supreme Court precedent creates clearly established federal law relating to the legal issue the

27  habeas petitioner raised in state court, the state court's decision cannot be contrary to or an

28  unreasonable application of clearly established federal law").

There is no United States Supreme Court decision which squarely addresses the issue presented in this case.  Nor is there a legal principle established by a Supreme Court decision that clearly extends to the novel factual context of this case.  In the cases relied on by petitioner, the prosecution instigated and set in motion a violation of the defendant's attorney-client privilege, which it then used to its advantage.  In this case, on the contrary, the prosecutor's request for a copy of petitioner's notes was made only after petitioner brought the notes to the witness stand to use in connection with his testimony.  The prosecutor's request to see these notes was permitted by state statute and sanctioned by court order.  Unlike the situation in *Weatherford* and *Danielson*, there was no purposeful improper intrusion by the prosecutor on petitioner's confidential notes for the purpose of giving him an unfair advantage.  Rather, he simply requested what the California Evidence Code allowed: the opportunity to review material that a witness is using to refresh his recollection.  Because there is no United States Supreme Court decision that gives a clear answer to the question presented, let alone one in petitioner's favor, the decision of the California Court of Appeal does not violate 28 U.S.C. §2254(d).  *See Wright v. Van Patten*, 552 U.S. 120, 126 (2008).

In any event, petitioner has failed to establish that the trial court's ruling had a "'substantial and injurious effect or influence in determining the jury's verdict.'"  *Brecht*, 507 U.S. at 637.  With regard to petitioner's cross-examination testimony that he falsely told his first trial counsel and his mother that he had not seen the videos of someone scrolling through the victim's cell phone, petitioner explained that he did so because he was originally advised not to make any incriminating statements.  Later, however, his counselor told him "to tell the truth so I told the truth."  Reporter's Transcript (RT) at 984-5.  He also explained that he did not tell his mother about seeing the videotape of someone scrolling through the victim's cell phone because he believed she was passing information along to other members of his family, who in turn were passing the information to his wife.  *Id.* at 985-86.  In addition, petitioner testified that he did not tell his attorney that he woke his wife up to ask her permission to have sex because it was a "minor" detail "in the scope of what I was being charged with."  *Id.* at 985.  Given the substantial evidence of petitioner's guilt, as set forth in the opinion of the California Court of Appeal, and the

19

1   fact that petitioner was able to plausibly explain the discrepancy between his trial testimony and

2   the contents of his notes, the court does not find that petitioner has established prejudice with

3   respect to this claim.  Any error by the trial court in allowing the prosecutor to take possession of

4   petitioner's notes could not have had a "substantial and injurious effect or influence in

5   determining the jury's verdict" under the circumstances of this case.  *Brecht*, 507 U.S. at 637.

6        For the foregoing reasons, petitioner is not entitled to relief on his claim that a violation of

7   the attorney-client privilege violated his federal constitutional rights.

8        **B.  Sufficiency of the Evidence**

9        Petitioner was charged with a five-year sentence enhancement for administering "a

10   controlled substance, to wit: AMBIEN, in violation of Penal Code section 12022.75" in the

11   course of committing the felony of sexual penetration with a foreign object.  Clerk's Transcript

12   on Appeal (CT) at 209.  The jury found this sentence enhancement to be true.  *Id.* at 483.  Penal

13   Code § 12022.75 provides, with respect to controlled substances, that "Any person who, in the

14   commission or attempted commission of any offense specified in paragraph (2), administers any

15   controlled substance listed in Section 11054, 11055, 11056, 11057, or 11058 of the Health and

16   Safety Code to the victim shall be punished by an additional and consecutive term of

17   imprisonment in the state prison for five years."  Cal. Pen. Code § 12022.75(b)(1).  The drug

18   "Ambien" is not specifically listed as a controlled substance under Health and Safety Code

19   §§ 11054, 11055, 11056, 11057 or 11058.  Further, the prosecutor did not introduce any evidence

20   at petitioner's trial to show that Ambien is a controlled substance under the relevant sections of

21   the Health and Safety Code.

22        In his next ground for relief, petitioner claims that the evidence introduced at his trial was

23   insufficient to support the jury finding that he administered a controlled substance to his wife.

24   ECF No. 1 at 45-49.  He notes that the jury instructions required the jurors to determine whether

25   he administered Ambien to his wife, but did not require them to determine if Ambien constituted

26   a controlled substance under the relevant sections of the Health and Safety Code.  *Id.* at 46.  He

27   argues that there was a complete lack of evidence to support the jury's true finding on the

28   sentence enhancement.

Petitioner raised this claim on direct appeal and also in a petition for review filed in the California Supreme Court.  Resp't's Lodg. Docs. 9, 17.  Accordingly, the claim is exhausted. *Gatlin v. Madding*, 189 F.3d 882, 888 (9th Cir. 1999).  In his opposition brief on appeal, respondent conceded that the evidence was insufficient to support the sentence enhancement for administering a controlled substance and agreed that petitioner's five year sentence on that enhancement should be reversed.  Resp't's Lodg. Doc. 10 at 50-51.  Subsequently, the California Court of Appeal requested briefing by the parties on the following two issues: (1) whether the court could take judicial notice of facts demonstrating that Ambien contained an ingredient that is a listed controlled substance; and (2) if the court could properly take judicial notice of these facts, what effect would this have on petitioner's claim of insufficient evidence.  Both parties filed responsive briefs.  Resp't's Lodg. Docs. 12, 13.

## 1. **State Court Decision**

The California Court of Appeal rejected petitioner's arguments, but only after construing them as a claim of jury instruction error instead of a claim of insufficient evidence.  The court explained its reasoning as follows:

> Defendant was charged and convicted of sexual penetration with a foreign object (Pen.Code, § 289, subd. (d)), with a special finding that he administered a controlled substance in the course of committing this felony (*id.*, § 12022.75, subds. (a), (b)(2)(D)).  The enhancement drew a five-year prison term and was proved by evidence that defendant used Ambien to render S. unconscious, enabling him to film and perform the act of digital penetration.

> Defendant contends that the enhancement must be stricken because the prosecution introduced no evidence that Ambien was a controlled substance.  We do not agree.

> Defendant's argument frames a false issue.  The question is not whether the prosecution failed to prove an element of the offense (that Ambien was a controlled substance) because the jury instruction given by the trial court completely removed that issue from the jury's consideration.

> The court instructed the jury as follows: "If you find defendant guilty of the crime charged in count one [digital penetration,] you must then decide whether the People have proved the additional allegation that defendant administered a controlled substance to [S.] during the commission of that crime. [¶] . . . To prove this allegation, the People must prove two things; number one, in the commission of sex penetration with a foreign object when [the]

victim [was] unconscious, [defendant] administered Ambien to [S.] [¶] And, number two, [defendant] did so for the purpose of committing the crime of sex penetration with a foreign object when the victim was unconscious."[12] (Italics added.)

Thus, the instruction conclusively presumed that Ambien was a controlled substance, rather than asking the jury to determine it as a factual issue. Because the instruction completely removed the issue from the jury's consideration, it makes no sense to ask whether that element of the crime was supported by substantial evidence. "'When proof of an element has been completely removed from the jury's determination, there can be no inquiry into what evidence the jury considered to establish that element because the jury was precluded from considering whether the element existed at all.'" (*People v. Flood* (1998) 18 Cal.4th 470, 533, 76 Cal.Rptr.2d 180, 957 P.2d 869 (*Flood*), quoting *United States v. Gaudin* (9th Cir.1994) 28 F.3d 943, 951.) Instead, the issue on appeal devolves into one of instructional error.

An instruction that forecloses jury inquiry into an element of the offense and relieves the prosecution from the burden of proving it violates the Fourteenth Amendment. (*Carella v. California* (1989) 491 U.S. 263, 266, 109 S.Ct. 2419, 105 L.Ed.2d 218, 222.) Such an instruction does not require automatic reversal, however. An instruction which misdescribes, omits or presumes an element of an offense is subject to harmless error review under *Chapman v. California* (1967) 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705, 710–711, i.e., whether the error was harmless beyond a reasonable doubt (*Flood, supra*, 18 Cal.4th at p. 499, 76 Cal.Rptr.2d 180, 957 P.2d 869). Stated another way, we must ask whether we can say beyond a reasonable doubt that the error did not contribute to the jury's verdict. (*Flood, supra*, 18 Cal.4th at p. 504, 76 Cal.Rptr.2d 180, 957 P.2d 869, citing *Yates v. Evatt* (1991) 500 U.S. 391, 402–403, 111 S.Ct. 1884, 114 L.Ed.2d 432, 448, *overruled on other grounds* in *Estelle v. McGuire* (1991) 502 U.S. 62, 72, fn. 4, 112 S.Ct. 475, 116 L.Ed.2d 385, 399.)

"One situation in which instructional error removing an element of the crime from the jury's consideration has been deemed harmless is where the defendant concedes or admits that element." (*Flood*, supra, 18 Cal.4th at p. 504, 76 Cal.Rptr.2d 180, 957 P.2d 869.)

Here, the jury instruction presuming Ambien was a controlled substance was given without objection and was never the topic of discussion in chambers. At trial, defendant did not dispute that Ambien was a controlled drug. His defense was that he procured a prescription for Ambien for himself, because he had trouble sleeping. In their summations, both attorneys argued their case as if it were a given fact that Ambien was a controlled substance. The prosecutor argued, "There's an enhancement here. And that's for the *administration* of Ambien to commit the crime." (Italics

---

[12]   Prior to this instruction, the court twice referred to the special allegation relating to count one as "administering Ambien," not "administering a controlled substance."

22

added.)   Defense counsel retorted, "She has no proof that at the time of that video [S.] was *given* Ambien."   (Italics added.)   The record thus establishes that the trial was conducted by the court and all parties as if Ambien's status as a controlled substance was a *presumed* fact.

There is a sound basis for judicially noticing the truth of the fact presumed in the instruction.   Judicial notice is commonly taken of well-known medical and scientific facts.   (See 1 Witkin, Cal. Evidence (4th ed. 2000) Judicial Notice, § 33, pp. 128–129 (Witkin) [and cases collected therein].)   Although "Ambien" is not listed as a controlled substance in the Health and Safety Code section 11057, subdivision (d) provides that controlled substances include "any material, compound, mixture, or preparation which contains any quantity of the following substances, including its salts, isomers, and salts of isomers whenever the existence of those salts, isomers, and salts of isomers is possible within the specific chemical designation: [¶] . . . [¶] (32) Zolpidem."

The Physicians' Desk Reference (PDR) states that "Ambien" is the chemical compound "*zolpidem* tartrate."   (Ambien, Physicians' Desk Reference, Prescription Drugs (63d ed. 2009) p. 2692, italics added.)

Judicial notice is a substitute for formal proof of facts.   (1 Witkin, supra, Judicial Notice, § 1, p. 102.)   Section 452 provides that judicial notice may be taken of "[f]acts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy."   (§ 452, subd. (h).)   The PDR has been recognized in other jurisdictions as an authoritative source for indisputably accurate information.   (See *Commonwealth v. Greco* (Mass.2010) 76 Mass.App.Ct. 296, 301, 921 N.E.2d 1001, 1006; *Kollmorgen v. State Bd. of Med. Examrs.* (Minn.Ct.App.1987) 416 N.W.2d 485, 488; *U.S. v. Dillavou* (S.D.Ohio 2009) 2009 WL 230118; *Wagner v. Roche Labs.* (Ohio 1996) 77 Ohio St.3d 116, 120, fn. 1, 671 N.E.2d 252, 256 ["The PDR is considered an authoritative source for information."].)

An appellate court may take judicial notice of any fact judicially noticeable in the trial court.   (Evid.Code, § 459, subd. (a).)[13]   Therefore, we take judicial notice, by reference to the PDR, that Ambien contains zolpidem, which is specifically listed as a controlled substance in Health and Safety Code section 11057, subdivision (d)(32).

"The United States Supreme Court has admonished that, '[h]armless-error analysis addresses . . . what is to be done about a trial error that, in theory, may have altered the basis on which the jury decided the case, but in practice clearly had no effect on the

---

[13]   In a letter requesting supplemental briefing, we informed the parties that we were considering the propriety of taking judicial notice of the PDR entry for Ambien, and afforded them an opportunity to brief the issue.

1   outcome.'"   (*People v. Harris* (1994) 9 Cal.4th 407, 431, 37
    Cal.Rptr.2d 200, 886 P.2d 1193, quoting *Rose v. Clark* (1986) 478
2   U.S. 570, 582, fn. 11, 106 S.Ct. 3101, 92 L.Ed.2d 460, 473.)

3   Our review of the trial record, coupled with undisputed facts of
    which we take judicial notice, convinces us beyond a reasonable
4   doubt the instructional error here played no part in the jury's true
    finding on the enhancement of administering a controlled
5   substance. Indeed, to overturn a verdict due to the absence of proof
    of an undisputedly true and judicially noticeable fact would be an
6   abdication of our constitutional duty to reverse only where the error
    complained of resulted in a miscarriage of justice. (Cal. Const., art.
7   VI, § 13.)

8   *Gray*, 124 Cal. Rptr. 3d at 634-36.

9   Petitioner argues that the California Court of Appeal improperly resolved his claim by

10  relying on a theory not raised or briefed by the parties and by failing to address the claim of

11  insufficient evidence actually raised. ECF No. 23 at 16. He argues the state court decision is not

12  entitled to deference under AEDPA because it "totally rejected a sufficiency of the evidence

13  analysis and took the tack the CCA itself could supply the missing element." ECF No. 1 at 49.

14  This court agrees.

15  Petitioner's claim before this court is that the evidence introduced at his trial is

16  insufficient to support the jury's finding that he administered a controlled substance. Petitioner's

17  allegations of insufficient evidence state a federal habeas claim. *Jackson v. Virginia*, 443 U.S.

18  307, 319 (1979); *In re Winship*, 397 U.S. 358, 364 (1970). As set forth above, the California

19  Court of Appeal chose not to address the sufficiency of the evidence claim raised by petitioner

20  but, instead, construed the claim as a challenge to the trial court's jury instructions and then took

21  judicial notice of facts that rendered the jury instruction error harmless. The court referred to

22  petitioner's claim of insufficient evidence as a "false issue" and proceeded to address a different

23  issue altogether.

24  This court will address petitioner's claim as it has been presented in his federal habeas

25  petition and will not attempt to recast it as a different claim. In this regard, the court notes that

26  claims challenging sufficiency of the evidence have been raised by several petitioners in both

27  published and unpublished cases in California under factual circumstances which are substantially

28  similar to the facts of this case. *See, e.g., People v. Davis*, 57 Cal.4th 353 (2013); *People v.*

24

1    *Nguyen*, No. A139003, 2014 WL 2195057 (Cal.App. 1st Dist. May 27, 2014) (unpublished

2    disposition); *People v. Bender*, No. A131954, 2013 WL 5827276 (Cal.App. 1st Dist. Oct. 30,

3    2013) (unpublished disposition).  Those cases were decided by California courts, including the

4    California Supreme Court, solely on the issue raised.  *Id.*  Indeed, this court has not been able to

5    find another state court decision on this type of claim in which the cognizable claim raised by the

6    petitioner has been recast by the appellate court as a different cognizable claim.  This court does

7    not find good cause to construe petitioner's allegations as a jury instruction claim and will

8    therefore address petitioner's insufficiency of the evidence claim on the merits.

9          Because the California Court of Appeal did not reach the merits of petitioner's

10    insufficiency of the evidence claim, this court will address the claim de novo.  *Stanley*, 633 F.3d

11    at 860; *Reynoso*, 462 F.3d at 1109; *Nulph*, 333 F.3d at 1056.

12                       **2.  <u>Applicable Legal Standards</u>**

13          The Due Process Clause "protects the accused against conviction except upon proof

14    beyond a reasonable doubt of every fact necessary to constitute the crime with which he is

15    charged."  *In re Winship*, 397 U.S. 358, 364 (1970).  There is sufficient evidence to support a

16    conviction if, "after viewing the evidence in the light most favorable to the prosecution, any

17    rational trier of fact could have found the essential elements of the crime beyond a reasonable

18    doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  *See also Juan H. v. Allen*, 408 F.3d 1262,

19    1274, 1275 & n. 13 (9th Cir.2005).  "[T]he dispositive question under *Jackson* is 'whether the

20    record evidence could reasonably support a finding of guilt beyond a reasonable doubt.'"  *Chein*

21    *v. Shumsky*, 373 F.3d 978, 982 (9th Cir. 2004) (quoting *Jackson*, 443 U.S. at 318).  Put another

22    way, "a reviewing court may set aside the jury's verdict on the ground of insufficient evidence

23    only if no rational trier of fact could have agreed with the jury."  *Cavazos v. Smith*, ___ U.S. ___,

24    ___, 132 S. Ct. 2, 4 (2011).

25          In conducting federal habeas review of a claim of insufficiency of the evidence, "all

26    evidence must be considered in the light most favorable to the prosecution."  *Ngo v. Giurbino*,

27    651 F.3d 1112, 1115 (9th Cir. 2011).  "A petitioner for a federal writ of habeas corpus faces a

28    heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction

1   on federal due process grounds." *Juan H.*, 408 F.3d at 1274.  The federal habeas court

2   determines sufficiency of the evidence in reference to the substantive elements of the criminal

3   offense as defined by state law.  *Jackson*, 443 U.S. at 324 n.16; *Chein*, 373 F.3d at 983.

4               **3.  Analysis**

5          Pursuant to California law, evidence that a substance is a "controlled substance" under the

6   Health and Safety Code must be proved by evidence from an expert witness or other similar

7   testimony; the brand or chemical name, standing alone, is insufficient for this purpose.  *Davis*, 57

8   Cal.4th at 361-62.  A trier of fact may rely on inferences to support a conviction but only if those

9   inferences are "of such substantiality that a reasonable trier of fact could determine beyond a

10  reasonable doubt" that the inferred facts are true."  *People v. Raley* (1992) 2 Cal.4th 870, 890–

11  891.  A reasonable inference, however, must be an inference drawn from evidence, it may not be

12  based on suspicion alone or speculation.  *Davis,* 57 Cal.4th at 360.

13         There is no dispute in this case that the prosecutor failed to introduce evidence to establish

14  that the drug petitioner administered to his wife was a controlled substance, as that term is defined

15  in Cal. Health and Safety Code §§ 11054, 11055, 11056, 11057, or 11058.  Nor was there any

16  evidence that Ambien's chemical structure included one of the controlled substances listed in any

17  of the relevant provisions of the Health and Safety Code.  Similar to the situation in *People v.*

18  *Davis*, "all the jury had before it was a chemical name not listed in any schedule of the code."  57

19  Cal.4th at 360.  Whether or not the substance petitioner administered was a "controlled

20  substance" was an element of the enhancement with which petitioner was charged.  As noted

21  above, respondent conceded in connection with petitioner's direct appeal that there was no

22  evidence presented to support a finding that petitioner administered a controlled substance, and

23  agreed that petitioner's five year sentence on that enhancement should be reversed.  Resp't's

24  Lodg. Doc. 10 at 50-51.  Under the circumstances of this case, no reasonable trier of fact could

25  have found this element of the sentence enhancement beyond a reasonable doubt.  *Jackson*, 443

26  U.S. at 319.  Accordingly, petitioner is entitled to relief on his claim of insufficient evidence.

27         In the context of a claim of insufficient evidence, judicially noticed facts after the jury's

28  discharge are insufficient to meet the government's burden of proof beyond a reasonable doubt.

1   Appellate courts are limited to the record before the jury when assessing the sufficiency of the

2   evidence. *Jackson*, 443 U.S. at 318 (the relevant inquiry is whether "the *record* evidence could

3   reasonably support a finding of guilt beyond a reasonable doubt (emphasis added)); *Davis*, 57

4   Cal.4th at 360 ("An appellate court cannot take judicial notice of additional facts the prosecution

5   failed to prove at trial to affirm a conviction"). The record evidence did not support a true finding

6   on the enhancement allegation. The facts of which the California Court of Appeal took judicial

7   notice after the verdict was reached cannot supply the evidence that was missing in this case.[14]

8      Even if this court analyzed petitioner's claim as a challenge to the jury instructions, the

9   court disagrees with the California Court of Appeal that the jury instructional error that occurred

10  here was harmless. Had the jury been properly instructed, it may well have concluded that the

11  prosecution failed to prove that Ambien was a controlled substance under Cal. Health and Safety

12  Code §§ 11054, 11055, 11056, 11057, or 11058. This is because if the jurors were asked to

13  decide whether Ambien was a controlled substance, there was no evidence from which they could

14  make such a determination. Without competent evidence of some kind about Ambien's chemical

15  structure, there was no rational basis for a jury to conclude that Ambien contained a chemical that

16  was on the list of controlled substances set forth in the Health and Safety Code. Of course, the

17  information of which the Court of Appeal took judicial notice, which appeared to provide a link

18  between Ambien and a controlled substance listed in the Health and Safety Code, was not before

19  petitioner's jury. *See also United States v. Gaudin*, 28 F.3d 943, 951–52 (9th Cir. 1994) (en

20  banc), *aff'd*, 515 U.S. 506 (June 19, 1995) (the failure to instruct a jury on an essential element of

21  a crime cannot be harmless error and was plain error requiring reversal).

22  _____

23  [14]   Petitioner claims that the California of Appeal violated the Sixth Amendment, as
    interpreted in *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), when it took judicial notice of
24  facts in order to supply evidence to support the true finding on the sentence enhancement. ECF
    No. 1 at 49. In *Apprendi*, the United States Supreme Court held that the Due Process Clause of
25  the Fourteenth Amendment and the Sixth Amendment notice and jury trial guarantees require that
    any fact that "increases the penalty for a crime beyond the prescribed statutory maximum" be
26  "submitted to a jury and proved beyond a reasonable doubt." *Id.*, 530 U.S. at 490. This court has
    concluded that insufficient evidence was presented to the jury to enable it to determine an element
27  of the sentence enhancement, in violation of petitioner's right to a jury determination beyond a
    reasonable doubt of every fact necessary to constitute the crime with which he is charged. In
28  effect then, petitioner's claim under *Apprendi* has been resolved or subsumed by this court's
    analysis of his claim of insufficient evidence.

**IV. Conclusion**

For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be granted on petitioner's claim that the evidence is insufficient to support the jury's true finding on the enhancement allegation under Cal. Penal Code § 12022.75.  The petition should be denied in all other respects.  If adopted, subject to the following exception, proceedings in state court leading to retrial on the enhancement allegation shall be commenced within 60 days.  However, if either party appeals the judgment in this case, no criminal proceedings need be commenced until 60 days after the issuance of the mandate following a final appellate decision or the denial of a petition for writ of certiorari, whichever occurs later.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case.  *See* Rule 11, Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED:  December 19, 2016.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE