1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   MARK WAYNE GRAY,                        No.  2:13-cv-0564-KJM-EFB P

12                    Petitioner,

13          vs.

14   BRENDA M. CASH,                         ORDER AND FINDINGS AND
                                             RECOMMENDATIONS
15                    Respondent.

16

17          Petitioner is a state prisoner proceeding through counsel with a petition for a writ of

18   habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a judgment of conviction

19   entered against him on June 30, 2009, in the Shasta County Superior Court, on charges of spousal

20   rape of an unconscious or sleeping victim, genital penetration with a foreign object through use of

21   controlled substances, four counts of first degree residential burglary, attempted first degree

22   residential burglary, sexual battery, stalking, attempted stalking, and numerous misdemeanors.[1]

23   _____

24          [1]  Petitioner was convicted of the following misdemeanors: two counts of sexual battery
     (Pen.Code, § 243.4, subd. (e)(1) (counts 10 & 24)), dissuading a witness/victim from prosecuting
25   a crime (id., § 136.1, subd. (b)(2) (count 20)), contempt of court/disobeying a court order (id., §
     166, subd. (a)(4) (count 22)), three counts of petty theft (id., §§ 484, subd. (a), 488 (counts 24, 25,
26   26)), eight counts of invading privacy by means of video (id., § 647, subd. (j)(3) (counts 11–18)),
     and peeking (id., § 647, subd. (i) (count 19)).  A misdemeanor conviction for inducing false
27   testimony (id., § 166, subd. (a)(1) (count 21)) was dismissed on the court's own motion for lack
     of a factual basis.
28
                                             1

Petitioner received a sentence of 20 years and 2 months in state prison. He seeks federal habeas relief on the following grounds: (1) a violation of the attorney client privilege during his trial violated his federal constitutional rights; (2) the evidence introduced at his trial was insufficient to support the jury's factual finding that he administered a controlled substance in the commission of the offense of genital penetration with a foreign object; and (3) the decision of the California Court of Appeal on one of his appellate claims violated his Sixth Amendment right to a jury trial.

The court issued findings and recommendations on December 20, 2016. ECF No. 37. Those findings recommended that petitioner's sufficiency of the evidence claim as to Ambien's status as a controlled substance be granted and his other claims be denied. *Id.* Both parties filed objections to the findings. ECF Nos. 44, 50. In addition to filing objections, respondent also augmented the record by submitting supplemental documents in paper evidencing the California Supreme Court's denial of a state habeas petition recently filed by petitioner. ECF No. 45. These records were not before the court when it issued its original findings and recommendations. After review of those records and, in light of the arguments in the parties' objections, the court finds it appropriate to vacate its previous findings and issue the following.

Upon careful consideration of the record and the applicable law and, for the reasons explained below, the undersigned recommends that petitioner's application for habeas corpus relief be granted in part and denied in part.

## I. Background

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

> Defendant Mark Wayne Gray met his wife S. when she was only 17 years old. The couple had three children, but the marriage fell apart and she moved out of their house. Rather than get on with his life, defendant turned hers into a living hell. He embarked on a course of conduct calculated to terrify her, drive her crazy, or both. As a result of misdeeds committed both before and after the separation, defendant was convicted by a jury of the felonies of spousal rape of unconscious or sleeping victim (Pen.Code, § 262, subd. (a)(3)), genital penetration with a foreign object (*id.*, § 289, subd. (d)) through use of a controlled substance (*id.*, § 12022.75), four counts of first degree residential burglary (*id.*, § 459), attempted first

degree residential burglary (*id.*, §§ 664, 459), sexual battery (*id.*, § 243.4, subd. (e)(1)), stalking (*id.*, § 646.9, subd. (a)) and attempted stalking (*id.*, §§ 664/646.9, subd. (b)), as well as a host of misdemeanors. He was sentenced to an aggregate term of 20 years and two months in state prison.

Defendant appeals, arguing that the trial court erred in denying his pretrial motion to suppress evidence. He also challenges several other convictions on procedural grounds. In the published parts of this opinion, we reject two of his arguments: (1) that the trial court committed reversible error in ordering disclosure to the prosecutor of documents defendant brought with him to the witness stand, over his objection that they were protected by the attorney-client privilege; and (2) that the enhancement for administering a controlled substance for the purpose of committing sexual penetration (Pen.Code, § 12022.75) must be vacated because the prosecution introduced no evidence that "Ambien" was a controlled substance.

As for the rest of defendant's claims, we find no reversible trial error, but shall strike two of the misdemeanor convictions, modify the sentence in minor respects, and otherwise affirm the judgment.

## FACTUAL BACKGROUND

### Prosecution's Case

S. and defendant met when she was 17 years old and he was 30. They dated, moved in together, got married in 1999, and had three children.

During their marriage defendant began to videotape them having sex, which made S. uncomfortable. A couple of times S. discovered that he had been secretly videotaping her. However, when she confronted him with it, he became angry.

In the fall of 2006, S. began to feel the marriage was not working out. In early 2007, she enrolled in some college classes, which made defendant unhappy.

One night in August 2007, an incident occurred where, after S. rebuffed defendant's sexual advances, he pinned her down on the bed so she could not breathe and assaulted her sexually. She fled the house, stayed at a friend's place and eventually moved into her own residence.[2]

Once S. moved into her own house in September 2007, she told defendant he was not allowed inside. From then on, unusual and suspicious events began to occur.

The tires in S.'s minivan kept going flat, despite the efforts of the car shop to reinflate them. In November, roofing nails were found

---

[2]  At the time of trial, S. and defendant were still legally married.

3

in the center of her tires, and in December, two new tires that she had received for her birthday were found slashed.

Various small items that S. kept in her minivan turned up missing, such as work shirts, CD's (compact discs), a phone charger and various items of personal clothing. Lights inside the van that she was sure she had turned off were turned back on.

Unusual occurrences also began happening around S.'s house. The electrical circuit breaker box was turned off mysteriously. Several articles of clothing were found with slits in them. Decorative pumpkins put outside the house repeatedly disappeared. On Thanksgiving Day 2007, the main water valve to the house was turned off. Single shoes of S.'s were missing and numerous items of personal clothing had disappeared. All of the thefts were reported to the police.

After the pumpkins kept disappearing, S. bought a security camera and installed it outside her home. The camera caught a videotape of defendant near her home at a time when she and the children were away. In December 2007, a PC-based video surveillance system S. had purchased was stolen out of her garage.

A private investigator hired by S. recorded two surveillance videos showing defendant entering her locked minivan and removing items from it, including panties, a purse and several CD's. One night in April 2008, S. heard a loud noise upstairs and discovered that a window had been broken. In June 2008, S. suspected that someone had placed spyware on her cell phone. Police subsequently recovered from defendant's house video footage indicating that he had scrolled through S.'s contacts on her cell phone with a gloved hand.

These events left S. shaken and afraid. On September 12, 2008, she obtained a restraining order against defendant.

On September 18, 2008, police obtained an arrest warrant for defendant and a search warrant for his house and car. When the officer read charges of theft or burglary, defendant responded that any items he took were under the belief they were his property.

In the trunk of defendant's car, police found S.'s CD's that had been reported stolen. Under the floor mat, they found a duplicate key to S.'s minivan.

Inside defendant's house, police found a set of keys to S.'s house before she had the locks changed. They also found numerous items S. had reported stolen from her home, including the single shoes that were taken from S.'s closet and her cell phone charger. During the same search, police discovered a VHS tape showing defendant having sex with S. while she was sleeping or unconscious. Numerous other videotapes taken by a hidden camera were discovered, some containing footage showing S. in various states of undress, and another showing defendant digitally penetrating her

4

vagina while she was asleep.[3]  Officers also found surreptitiously filmed videotapes depicting defendant's next door neighbors engaging in sexual activity.

Defendant's criminal misconduct did not end with his arrest. Defendant used his mother as an intermediary to tell S. that he would agree to whatever child custody arrangement she wanted if she would drop the charges against him.  A secretly taped jailhouse conversation indicated defendant and his mother collaborated in trying to avoid a subpoena so that she would not have to testify at trial.

Defendant's former cellmate, Courtney Jones Botta, testified that defendant offered him money to commit acts of petty theft and vandalism against S.'s property.  Defendant wanted these acts done while he was in custody, so as to make it appear he was not the perpetrator of the charged crimes.

**Defense**

Defendant took the stand in his own defense.  He testified that he and his wife had a "great sex life."  He admitted he used a camera to videotape S. in states of undress and recorded footage of them having sex, but insisted that "90 percent of the time" S. knew about it and did not object.

Defendant stated that he started secretly videotaping S. in June 2007 after their relationship became rocky, because she started acting "suspicious" and "paranoid," like she was hiding something from him.  He also believed she was spending time with other men and taking some of his things.

Defendant explained the digital penetration video by stating that he had been massaging his wife to see if he could motivate her to have sex, and was shocked to realize that she had fallen asleep.  He videotaped the episode to prove to her what a sound sleeper she was.  He denied giving her narcotics or sleep medication.  He claimed that he took the Ambien himself to help him fall asleep.

Explaining the video that formed the basis of the spousal rape by intoxication charge, defendant claimed that he filmed S. asleep, paused the video to obtain her consent to have sex with him, and then restarted the filming.  He insisted his wife was awake during the entire act of intercourse.

Defendant denied ever breaking into S.'s house, stealing items of personal property, or committing acts of vandalism directed at her. He admitted taking things out of her van, but claimed he was exercising his community property rights.  He also admitted videotaping his neighbors having sex on several occasions.  He claimed that they were having sex in their backyard, and was

---

[3]  A bottle of sleeping pills with the trade name "Ambien" was also recovered.  Some of the pills had been crushed into a powder and placed in a paper bindle.

concerned that his children would see them.  The purpose of the taping was to gather evidence for the police.

*People v. Gray*, 124 Cal.Rptr.3d 625, 626-29 (2011), *as modified on denial of reh'g* (May 19, 2011).

After the California Court of Appeal affirmed his judgment of conviction, petitioner filed a petition for rehearing.  ECF No. 1-1 at 41.  The Court of Appeal modified its opinion to correct a typographical error but otherwise denied rehearing.  *Id.* at 60.  Petitioner subsequently filed a petition for review in the California Supreme Court.  The Supreme Court summarily denied review and ordered that the opinion of the Court of Appeal not be officially published.  *Id.* at 63.  Justice Kennard was of the opinion that the petition should be granted.  *Id.*

Petitioner filed a petition for certiorari in the United States Supreme Court on November 8, 2011.  ECF No. 1 at 15.  The question presented for review concerned the scope of a search warrant executed by the police.  *Id.* That petition was summarily denied.  ECF No. 1-1 at 65.

**II.  Standards of Review Applicable to Habeas Corpus Claims**

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or application of state law.  *See Wilson v. Corcoran*, 562 U.S. 1,5 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

6

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. *Thompson v. Runnels*, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing *Greene v. Fisher*, ___ U.S. ___, 132 S.Ct. 38 (2011); *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." *Stanley*, 633 F.3d at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013) (citing *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012) (per curiam)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct. *Id.* Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. *Price v. Vincent*, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. [4] *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be

---

[4] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)).

unreasonable." *Williams*, 529 U.S. at 412. *See also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. *Delgadillo v. Woodford*, 527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Richter*, 562 U.S. at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." *Id.* at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that

the federal claim was adjudicated on the merits. *Johnson v. Williams*, ___ U.S. ___, ___, 133 S.Ct. 1088, 1091 (2013).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). *Stanley*, 633 F.3d at 860; *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. *Stancle v. Clay*, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012). While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98. This court "must determine what arguments or theories ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102. The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (quoting *Richter*, 562 U.S. at 98).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th Cir. 2003).

## III. Petitioner's Claims

### A. Violation of Attorney-Client Privilege

In his first ground for federal habeas relief, petitioner claims that his Fifth Amendment right against self-incrimination, his Sixth Amendment rights to counsel and a jury trial, and his

Fourteenth Amendment right to due process were violated when the prosecutor was allowed to take possession and make use of written material that petitioner brought to the witness stand to refresh his recollection of the relevant events. ECF No. 1 at 12, 13.[5] Petitioner claims that in requiring him to turn over this material to the prosecutor, the trial judge "compelled the disclosure of attorney-client privileged confidential communications during the trial." *Id.* at 16. Petitioner also argues that the California Court of Appeal made an erroneous factual finding that the material taken from petitioner consisted of "notes being employed by a witness" instead of protected attorney-client communications. *Id.* at 33. He argues the judge's ruling had a substantial and injurious effect on the verdict.[6] *Id.*

## 1. <u>State Court Decision</u>

The California Court of Appeal denied this claim in a lengthy decision that was originally certified for partial publication. The court explained the background to the claim and its analysis thereon, as follows:

> Defendant argues that it was reversible error for the trial court to order him to surrender 18 pages of notes that he brought with him to the witness stand. He asserts that such compelled disclosure was a violation of the attorney-client privilege, and that the prosecutor's use of the notes severely damaged his defense. We do not agree.
>
> **A. Factual Background**
>
> In the middle of defendant's testimony, the prosecutor asked for a bench conference. Out of the presence of the jury, the trial judge, the Honorable Monica Marlow, stated on the record that defendant had taken certain notes with him to the witness stand and that the prosecutor had asked to review them. Defense counsel's initial reaction was, "That would be fine. I don't know what he's taken

---

[5] Page number citations such as this one are to the page numbers reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

[6] Respondent argues that petitioner's Fifth Amendment claim is not exhausted. ECF No. 15 at 20 n.1. Generally, a state prisoner must exhaust all available state court remedies either on direct appeal or through collateral proceedings before a federal court may consider granting habeas corpus relief. 28 U.S.C. § 2254(b)(1). However, an application for a writ of habeas corpus "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). *See Cassett v. Stewart*, 406 F.3d 614, 624 (9th Cir. 2005). Assuming *arguendo* that petitioner's Fifth Amendment claim is unexhausted, this court recommends that it be denied on the merits pursuant to 28 U.S.C. § 2254(b)(2).

10

with him." Defendant, however, asked, "What if I have a problem with that?" A recess was then taken to allow defendant to consult with his attorney.

At the conclusion of the conference, defense counsel Amy Babbits explained that the notes were communications defendant made with his prior attorney and with her. Judge Marlow asked why defendant had the notes with him on the witness stand, to which Attorney Babbits had no ready reply. The judge then ordered the notes placed in a sealed envelope until an Evidence Code section 402[7] hearing could be held regarding their disclosure. Defendant objected to this turn of events, stating "I would like my notes. I've worked on the notes for eight months." Judge Marlow asked Attorney Babbits whether she explained to her client that if he took the notes to the witness stand the prosecutor would have a right to review them. She responded, "I've told him that. Yes."

Judge Marlow explained to defendant that if he chose to have the notes with him on the witness stand, they would be "discoverable to the prosecution." Defendant replied, "That damages my case." The judge stated that the decision was his, but if he chose to take the notes with him, "you may end up with a court ruling you don't agree with . . . ." Defendant responded that he would testify without the notes.

Subsequently, a section 402 hearing was held on the discoverability of the notes.[8] The prosecution's investigator testified that he saw defendant consulting the notes "at least four times" during his testimony. Defendant admitted that he took the notes to the stand, but claimed that he referred to them only a couple of times, to check on dates.

Attorney Babbits took the position that the documents were privileged attorney-client communications and were therefore protected from disclosure. The prosecutor argued that by taking the documents with him to the witness stand to refresh his memory, defendant had waived any privilege and subjected them to discovery under section 771.

When his trial testimony resumed, the prosecutor elicited defendant's admission that he had taken the notes with him to the witness stand the previous day. At a resumption of the section 402 hearing, defendant testified that the notes were "letters and summaries to [his] attorney" since November of 2008. He admitted that he reviewed them to refresh his recollection just prior to testifying. Under questioning by Attorney Babbits, defendant stated that the notes were reviewed during conversations between

---

[7]   Undesignated statutory references are to the Evidence Code. (footnote in original text)

[8]   The notes hereinafter referred to consist of a six-page document and a 12–page document. Each begins with the salutation "Dear Josh," a reference to defendant's former attorney, Josh Lowery. (footnote in original text)

11

him and his present and former attorneys, that some were prepared at his attorney's request, and that some were written by his attorney.

Judge Marlow then took a recess to view the documents in camera. Afterward, she announced that she was satisfied they contained no attorney work product and thus were not protected by that privilege. Judge Marlow also determined that the documents were "simply a summary of [defendant's] recollection of events," the primary purpose of which was to refresh his memory. The court concluded that, even though the notes might have been protected initially as attorney-client communication, defendant had waived the privilege by bringing them to the witness stand to refresh his memory during his trial testimony. Accordingly, the court ordered disclosure of the notes to the prosecutor.

In a later exchange, Attorney Babbits clarified that she did not object to a one-page summary that defendant concededly looked at while testifying, but did object, on grounds of attorney-client privilege, to disclosure of the six- and 12 - page documents he had brought with him to the witness stand. Judge Marlow ruled, however, that under section 771, the prosecutor had a right to review any writing defendant actually used to refresh his memory.

During cross-examination, the prosecutor used the notes to elicit defendant's admission that he lied to his attorney when he wrote that he never saw the video of someone scrolling with S.'s cell phone. With respect to the spousal rape charge, the prosecutor got defendant to admit that the notes failed to mention his current claim that he paused the video to obtain S.'s consent before having intercourse with her.

**B. Analysis**

Defendant contends that the trial court violated the attorney-client privilege by allowing the prosecutor to see the notes he used while testifying. He asserts that the documents were absolutely privileged as confidential communications and that, notwithstanding section 771, the mere fact that he took them to the witness stand did not constitute a waiver of the privilege.

Section 954 states in relevant part: "Subject to Section 912 and except as otherwise provided in this article, the client, whether or not a party, has a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer . . . ." (§ 954, 1st par.) Section 912 states in pertinent part: "[T]he right of any person to claim a privilege provided by Section 954 . . . is waived with respect to a communication protected by the privilege if any holder of the privilege, without coercion, has disclosed a significant part of the communication or has consented to disclosure made by anyone. *Consent to disclosure is manifested by* any statement or *other conduct of the holder of the privilege indicating consent to the disclosure*, including failure to claim the privilege in any proceeding in which the holder has the legal standing and

opportunity to claim the privilege."  (§ 912, subd. (a), italics added.)

Section 771 states, with inapplicable exceptions, that "if a witness, either while testifying or prior thereto, uses a writing to refresh his memory with respect to any matter about which he testifies, *such writing must be produced at the hearing at the request of an adverse party* and, unless the writing is so produced, the testimony of the witness concerning such matter shall be stricken."  (§ 771, subd. (a), italics added.)

We shall assume for purposes of argument that the two documents in question were confidential communications between defendant and his attorneys and thus presumptively privileged.  The decisive question is whether Judge Marlow correctly ruled that defendant's use of these notes to refresh his memory constituted a waiver of that privilege.

Cases addressing the interplay between section 771 and the attorney-client privilege are few.  In *Kerns Construction Co. v. Superior Court* (1968) 266 Cal.App.2d 405, 72 Cal.Rptr. 74, the defendant's employee used certain investigation and accident reports to refresh his testimony at a deposition.  When the plaintiff's attorney demanded disclosure of the reports, defense counsel objected on grounds of attorney-client privilege.  (*Id.* at pp. 408–409, 72 Cal.Rptr. 74.)  The Court of Appeal, Fourth Appellate District, Division Two, held that the reports were properly subject to disclosure.  "Having no independent memory from which he [the witness] could answer the questions; having had the papers and documents produced by [defendant] Gas Co.'s attorney for the benefit and use of the witness; [and,] having used them to give the testimony he did give, it would be unconscionable to prevent the adverse party from seeing and obtaining copies of them.  We conclude there was a waiver of any privilege which may have existed." (*Id.* at p. 410, 72 Cal.Rptr. 74.)

However, in *Sullivan v. Superior Court* (1972) 29 Cal.App.3d 64, 105 Cal.Rptr. 241, (*Sullivan*), a conference between the plaintiff and her attorney regarding the facts of an automobile accident was tape recorded and then transcribed.  The plaintiff reviewed the transcript to refresh her memory before giving deposition testimony.  After ascertaining that the plaintiff had used it to refresh her memory, defense counsel demanded disclosure of the transcript under section 771.  (*Sullivan*, at p. 67, 105 Cal.Rptr. 241.)

The Court of Appeal, First Appellate District, Division Four, held that the privilege was not waived under these circumstances.  Although it recognized an apparent conflict between section 771, which requires the production of all writings used to refresh testimony, and section 954, which protects confidential communications between attorney and client (*Sullivan, supra,* 29 Cal.App.3d at p. 72, 105 Cal.Rptr. 241), the court, as a matter of statutory interpretation, held that the word "writing" in section 771 was never intended to include a verbatim transcript of a confidential interview between attorney and client with respect to the core issues

in the case (*Sullivan*, at p. 73, 105 Cal.Rptr. 241). In light of the "age and sanctity" of the privilege, the *Sullivan* court found it doubtful that the Legislature intended the word "writing" in section 771 to cover such a unique document as a transcript of a confidential attorney-client conversation. (*Sullivan*, at pp. 73–74, 105 Cal.Rptr. 241.)

Much more recently, in *People v. Smith* (2007) 40 Cal.4th 483, 54 Cal.Rptr.3d 245, 150 P.3d 1224, the California Supreme Court had no trouble deciding that the mandate of section 771 prevailed over a claim of psychotherapist-patient privilege. There, defense-retained psychologist, Dr. Oliver Glover, administered numerous psychological tests to the defendant and used the results to refresh Dr. Glover's recollection before testifying. The prosecution moved to discover Dr. Glover's notes, raw data and test materials under sections 771 and 721, subdivision (a), criterion (3) (providing that an expert witness may be fully cross-examined as to "the matter upon which his or her opinion is based and the reasons for his or her opinion"). (*People v. Smith, supra*, 40 Cal.4th at pp. 507–508, 54 Cal.Rptr.3d 245, 150 P.3d 1224.)

*Smith* held that the foregoing statutes required production of the materials. Noting that Dr. Glover relied on the documents to refresh his memory and to formulate his opinion, the Supreme Court ruled that the trial court "did not abuse its discretion" in ruling that the prosecution was entitled to disclosure of the doctor's tests and notes. (*People v. Smith, supra*, 40 Cal.4th at pp. 508–509, 54 Cal.Rptr.3d 245, 150 P.3d 1224.)

Applying the foregoing principles and interpreting the relevant statutes, we uphold the trial court's determination that the attorney-client privilege was waived under the circumstances here.

It is the function of the trial court to resolve any factual dispute upon which a claim of privilege depends (*Lipton v. Superior Court* (1996) 48 Cal.App.4th 1599, 1619, 56 Cal.Rptr.2d 341) and the court's resolution of such factual conflicts will not be disturbed if supported by substantial evidence (*Sierra Vista Hospital v. Superior Court for San Luis Obispo County* (1967) 248 Cal.App.2d 359, 364–365, 56 Cal.Rptr. 387). Moreover, discovery orders are reviewed for abuse of discretion. (*People ex rel. Lockyer v. Superior Court* (2004) 122 Cal.App.4th 1060, 1071, 19 Cal.Rptr.3d 324.)

Unlike the situation in *Sullivan*, the prosecutor was not seeking to discover the contents of a pretrial attorney-client communication. She merely sought notes that were being employed by a witness during the course of his testimony.

Section 954 declares that the attorney-client privilege may be waived by any conduct on the part of the privilege holder manifesting consent to the disclosure. Evidence adduced at the section 402 hearing revealed that defendant's "Dear Josh" letters actually consisted primarily of notes he prepared in computer class during his incarceration. They contained a count-by-count response

14

to the criminal charges. Defendant brought the documents with him to the witness stand, referred to them on several occasions while testifying, and admittedly used them to refresh his memory.

A person "who exposes any significant part of a communication in making his own case waives the privilege with respect to the communication's contents bearing on discovery, as well." (*Samuels v. Mix* (1999) 22 Cal.4th 1, 20–21, fn. 5, 91 Cal.Rptr.2d 273, 989 P.2d 701; *see also* § 912, subd. (a); *People v. Barnett* (1998) 17 Cal.4th 1044, 1124, 74 Cal.Rptr.2d 121, 954 P.2d 384.) By bringing the notes to the witness stand and using them to refresh his memory, defendant made their contents fair game for examination and inquiry. Such conduct is inconsistent with an intent to preserve them as confidential attorney-client communications.

"The doctrine of waiver of the attorney-client privilege is rooted in notions of fundamental fairness. Its principal purpose is to protect against the unfairness that would result from a privilege holder selectively disclosing privileged communications to an adversary, revealing those that support the cause while claiming the shelter of the privilege to avoid disclosing those that are less favorable." (*Tennenbaum v. Deloitte & Touche* (9th Cir.1996) 77 F.3d 337, 340–341, citing 8 Wigmore, *Evidence* (McNaughton ed. 1961) § 2327, p. 636.)

It would be unjust to allow a party to use written materials on the witness stand to enable him to present his case to the jury and then hide behind a claim of attorney-client privilege when his adversary seeks to review the same materials.[9] The trial court reasonably found that, by using the documents as a memory-refreshing device and visual aid in presenting his testimony, defendant waived any claim of attorney-client privilege. Accordingly, the court properly required their disclosure to the prosecution pursuant to the mandate of section 771. We find no abuse of discretion in the disclosure order.[10]

---

[9] Section 771 provides an alternative – striking defendant's testimony – but that apparently was not requested by the parties. (footnote in original text)

[10] Defendant also claims the trial court's in camera review was itself error, citing *Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 101 Cal.Rptr.3d 758, 219 P.3d 736. In *Costco*, the Supreme Court noted that section 915, subdivision (a) prohibits information claimed to be protected by the attorney-client privilege from disclosure to a presiding officer. (*Costco*, at p. 736, 101 Cal.Rptr.3d 758, 219 P.3d 736.) Although the statute allows in camera review to enable a trial court to rule on a claim of work product privilege, it has no counterpart with respect to the attorney-client privilege. Thus, the trial court erred by conducting an in camera review of the subject attorney-client letter. (*Id.* at pp. 736–737, 101 Cal.Rptr.3d 758, 219 P.3d 736.) Unlike the situation in *Costco*, Judge Marlow conducted an in camera review for the stated purpose of ascertaining whether any attorney work product privilege applied, which is expressly permitted by section 915, subdivision (b). Defense counsel lodged no objection to the court's procedure. Accordingly, any claim of error has been forfeited. (footnote in original text)

*People v. Gray*, No. C062668, 124 Cal.Rptr.3d 625, 626-29 (2011).

## 2. <u>Analysis</u>

The decision of the California Court of Appeal on petitioner's claim regarding the violation of the attorney-client privilege turns on an analysis of California case law and statutes. As explained above, a federal writ is not available for alleged error in the interpretation or application of state law. *Wilson*, 562 U.S. at 5; *Estelle*, 502 U.S. at 67-68. To the extent petitioner is alleging that the trial court violated state law in ordering him to turn over his notes to the prosecutor, his claims are not cognizable in this federal habeas action. This would include whether petitioner validly waived the attorney-client privilege under state law by relying on material he brought to the witness stand. The only claims that are properly before this court are claims alleging federal constitutional error. The court will address those claims below.

Citing *Weatherford v. Bursey*, 429 U.S. 545 (1977), petitioner claims that being forced to turn over attorney-client material to the prosecutor violated his Sixth Amendment right to counsel. ECF No. 1 at 35. In *Weatherford*, an undercover agent attended sessions between the defendant and the defendant's attorney at the invitation of defense counsel, who believed that the agent was also being prosecuted for the same offense. Although the agent sat in on these sessions, he did not disclose any information he learned at the sessions to his superiors or to the prosecution. The Court of Appeals for the Fourth Circuit held that the agent's actions violated the Sixth Amendment because "whenever the prosecution knowingly arranges and permits intrusion into the attorney-client relationship the right to counsel is sufficiently endangered to require reversal and a new trial." *Weatherford*, 429 U.S. at 549, 97 S.Ct. 837 (quoting *Bursey v. Weatherford*, 528 F.2d 483, 486 (4th Cir. 1975)). The Supreme Court reversed the Fourth Circuit, holding that a Sixth Amendment violation in this context requires not only intrusion into the attorney-client privilege but also a showing of prejudice. Later, in *Cluchette v. Rushen*, 770 F.2d 1469, 1471 (9th Cir. 1985), the Ninth Circuit explained:

> Standing alone, the attorney-client privilege is merely a rule of evidence; it has not yet been held a constitutional right. *See Maness v. Meyers*, 419 U.S. 449, 466 n. 15, 95 S.Ct. 584, 595 n. 15, 42 L.Ed.2d 574 (1975); *Beckler v. Superior Court*, 568 F.2d 661, 662 (9th Cir.1978). In some situations, however, government

16

> interference with the confidential relationship between a defendant and his counsel may implicate Sixth Amendment rights. *See, e.g., Weatherford v. Bursey*, 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977). Such an intrusion violates the Sixth Amendment only when it substantially prejudices the defendant. *United States v. Irwin*, 612 F.2d 1182, 1186-87 (9th Cir.1980); *see United States v. Glover*, 596 F.2d 857, 863-64 (9th Cir.), *cert. denied*, 444 U.S. 860, 100 S.Ct. 124, 62 L.Ed.2d 81 (1979).

*Cluchette v. Rushen*, 770 F.2d 1469, 1471 (9th Cir. 1985).

Petitioner also cites *United States v. Danielson*, 325 F.3d 1054 (9th Cir. 2003), in support of his federal constitutional claims.[11] ECF No. 1 at 38. In *Danielson*, a criminal defendant revealed his trial strategy to a confidential government informant. Although the government had not directed the informant to obtain this information, it later encouraged the informant to keep talking to the defendant and paid some of his expenses while he continued to gather information. *Danielson*, 325 F.3d at 1060. Under these circumstances, the Ninth Circuit found that the government had improperly intruded into the attorney-client relationship. Citing the Supreme Court decision in *Weatherford*, the court remanded the case to the trial court to determine whether petitioner had suffered "substantial" prejudice from the government's improper actions. The Ninth Circuit explained:

> Substantial prejudice results from the introduction of evidence gained through the interference against the defendant at trial, from the prosecution's use of confidential information pertaining to defense plans and strategy, and from other actions designed to give the prosecution an unfair advantage at trial.

*Id.* at 1069.

Petitioner argues that, in this case, "the prosecutor was able to utilize the attorney-client communications to damage the credibility of petitioner in front of the jury and it was that prejudicial conduct which caused the constitutional violations complained of here." ECF No. 1 at 35. Petitioner points out that the prosecutor used the confiscated material to cross-examine him, eliciting the fact that he had lied to his attorneys and his mother, and had failed to tell his attorney that he paused the videotape in order to secure his wife's consent to sexual intercourse. *Id.* at 39-

---

[11] Petitioner mis-labels this case *United States v. Dennis. Id.* However, it is clear that he is referring to the *Danielson* case.

40.  He contends that the prosecutor's actions, in effect, "invaded the defense camp." *Id.* at 43.

Petitioner asks:

> What can be more injurious to a defendant's case than having the prosecutor holding in her hand a sheaf of 18 pages of letters from client to attorney and cross-examining the defendant, Mr. Gray, on the contents of those letters and getting him to admit that he lied to his attorney and that he lied even to his own mother about material facts of the case.

*Id.* at 44.

Petitioner also notes that the prosecutor referred to the notes in his closing argument and read aloud from one of petitioner's letters to his counsel, comparing the statements contained therein with petitioner's trial testimony.  *Id.* at 39-40.  He argues:

> Here, the state deliberately intruded into petitioner's privileged relationship with his attorneys.  As in other federal cases, the government here, unwisely but actively, infiltrated the defense, not by planting informants but, incomprehensibly with the approval of a California state court, intercepting and actually seizing and using in court against petitioner, confidential communications between petitioner and his attorneys.

*Id.* at 36-37.

Finally, petitioner argues that the California Court of Appeal made a factual misstatement when it found that he brought the notes to the witness stand and used them to refresh his memory. He contends that, on the contrary, the court and prosecutor agreed that petitioner had not read from or viewed the documents during his testimony, but only before he took the witness stand. *Id.* at 42.

As explained above, a federal habeas court must deny habeas relief with respect to any claim adjudicated on the merits in a state court proceeding unless the proceeding "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1), (2).  Clearly established Federal law under § 2254(d)(1) is "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).  When

18

a Supreme Court decision does not 'squarely address[ ] the issue in th[e] case . . . it cannot be said, under AEDPA, there is 'clearly established' Supreme Court precedent addressing the issue before us, and so we must defer to the state court's decision." *Moses v. Payne*, 555 F.3d 742, 754 (9th Cir. 2009). In other words, under AEDPA a federal habeas court must defer to the state court's decision if a Supreme Court decision fails to "squarely address" the issue in the case or to establish a legal principle that "clearly extends to a new context." *Varghese v. Uribe*, 736 F.3d 817, 820 (9th Cir. 2013). *See also Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004) ("If no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law").

There is no United States Supreme Court decision which squarely addresses the issue presented in this case. Nor is there a legal principle established by a Supreme Court decision that clearly extends to the novel factual context of this case. In the cases relied on by petitioner, the prosecution instigated and set in motion a violation of the defendant's attorney-client privilege, which it then used to its advantage. In this case, on the contrary, the prosecutor's request for a copy of petitioner's notes was made only after petitioner brought the notes to the witness stand to use in connection with his testimony. The prosecutor's request to see these notes was permitted by state statute and sanctioned by court order. Unlike the situation in *Weatherford* and *Danielson*, there was no purposeful improper intrusion by the prosecutor on petitioner's confidential notes for the purpose of giving him an unfair advantage. Rather, he simply requested what the California Evidence Code allowed: the opportunity to review material that a witness is using to refresh his recollection. Because there is no United States Supreme Court decision that gives a clear answer to the question presented, let alone one in petitioner's favor, the decision of the California Court of Appeal does not violate 28 U.S.C. § 2254(d). *See Wright v. Van Patten*, 552 U.S. 120, 126 (2008).

In any event, petitioner has failed to establish that the trial court's ruling had a "'substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht*, 507 U.S. at 637. With regard to petitioner's cross-examination testimony that he falsely told his first

trial counsel and his mother that he had not seen the videos of someone scrolling through the victim's cell phone, petitioner explained that he did so because he was originally advised not to make any incriminating statements.  Later, however, his counselor told him "to tell the truth so I told the truth."  Reporter's Transcript (RT) at 984-5.  He also explained that he did not tell his mother about seeing the videotape of someone scrolling through the victim's cell phone because he believed she was passing information along to other members of his family, who in turn were passing the information to his wife.  *Id.* at 985-86.  In addition, petitioner testified that he did not tell his attorney that he woke his wife up to ask her permission to have sex because it was a "minor" detail "in the scope of what I was being charged with."  *Id.* at 985.  Given the substantial evidence of petitioner's guilt, as set forth in the opinion of the California Court of Appeal, and the fact that petitioner was able to plausibly explain the discrepancy between his trial testimony and the contents of his notes, the court does not find that petitioner has established prejudice with respect to this claim.  Any error by the trial court in allowing the prosecutor to take possession of petitioner's notes could not have had a "substantial and injurious effect or influence in determining the jury's verdict" under the circumstances of this case.  *Brecht*, 507 U.S. at 637.

For the foregoing reasons, petitioner is not entitled to relief on his claim that a violation of the attorney-client privilege violated his federal constitutional rights.

**B.  Sufficiency of the Evidence**

Petitioner was charged with a five-year sentence enhancement for administering "a controlled substance, to wit: AMBIEN, in violation of Penal Code section 12022.75" in the course of committing the felony of sexual penetration with a foreign object.  Clerk's Transcript on Appeal (CT) at 209.  The jury found this sentence enhancement allegation to be true.  *Id.* at 483.  Penal Code § 12022.75 provides, with respect to controlled substances, that "Any person who, in the commission or attempted commission of any offense specified in paragraph (2), administers any controlled substance listed in Section 11054, 11055, 11056, 11057, or 11058 of the Health and Safety Code to the victim shall be punished by an additional and consecutive term of imprisonment in the state prison for five years."  Cal. Pen. Code § 12022.75(b)(1).  The drug "Ambien" is not specifically listed as a controlled substance under Health and Safety Code

1    §§ 11054, 11055, 11056, 11057 or 11058.  Further, the prosecutor did not introduce any evidence

2    at petitioner's trial to show that Ambien is a controlled substance under the relevant sections of

3    the Health and Safety Code.

4          With that absence of evidence on the question, petitioner claims that the evidence

5    introduced at his trial was insufficient to support the jury finding that he administered a controlled

6    substance to his wife.  ECF No. 1 at 45-49.  He notes that the jury instructions required the jurors

7    to determine whether he administered Ambien to his wife, but did not require them to determine

8    if Ambien constituted a controlled substance under the relevant sections of the Health and Safety

9    Code.  *Id.* at 46.  He argues that there was a complete lack of evidence to support the jury's true

10   finding on the sentence enhancement.

11         Petitioner raised this claim on direct appeal and also in a petition for review filed in the

12   California Supreme Court.  Resp't's Lod. Docs. 9, 17.  Accordingly, the claim is exhausted.

13   *Gatlin v. Madding*, 189 F.3d 882, 888 (9th Cir. 1999).  In his opposition brief on appeal,

14   respondent conceded that the evidence was insufficient to support the sentence enhancement for

15   administering a controlled substance and agreed that petitioner's five year sentence on that

16   enhancement should be reversed.  Resp't's Lod. Doc. 10 at 50-51.  Subsequently, the California

17   Court of Appeal requested briefing by the parties on the following two issues: (1) whether the

18   court could take judicial notice of facts demonstrating that Ambien contained an ingredient that is

19   a listed controlled substance; and (2) if the court could properly take judicial notice of these facts,

20   what effect this would have on petitioner's claim of insufficient evidence.  Both parties filed

21   responsive briefs.  Resp't's Lod. Docs. 12, 13.

22                    **1.  State Court Decision**

23         The California Court of Appeal rejected petitioner's arguments, but only after

24   characterizing them and construing his claim as one of jury instruction error instead of a claim of

25   insufficient evidence.  The state court explained its reasoning as follows:

26                 Defendant contends that the enhancement must be stricken because
                   the prosecution introduced no evidence that Ambien was a
27                 controlled substance.  We do not agree.

28

Defendant's argument frames a false issue. The question is not whether the prosecution failed to prove an element of the offense (that Ambien was a controlled substance) because the jury instruction given by the trial court completely removed that issue from the jury's consideration.

The court instructed the jury as follows: "If you find defendant guilty of the crime charged in count one [digital penetration,] you must then decide whether the People have proved the additional allegation that defendant administered a controlled substance to [S.] during the commission of that crime. [¶] . . . To prove this allegation, the People must prove two things; number one, in the commission of sex penetration with a foreign object when [the] victim [was] unconscious, [defendant] *administered* Ambien to [S.] [¶] And, number two, [defendant] did so for the purpose of committing the crime of sex penetration with a foreign object when the victim was unconscious."[12] (Italics added.)

Thus, the instruction conclusively presumed that Ambien was a controlled substance, rather than asking the jury to determine it as a factual issue. Because the instruction completely removed the issue from the jury's consideration, it makes no sense to ask whether that element of the crime was supported by substantial evidence. "'When proof of an element has been completely removed from the jury's determination, there can be no inquiry into what evidence the jury considered to establish that element because the jury was precluded from considering whether the element existed at all.'" (*People v. Flood* (1998) 18 Cal.4th 470, 533, 76 Cal.Rptr.2d 180, 957 P.2d 869 (*Flood*), quoting *United States v. Gaudin* (9th Cir.1994) 28 F.3d 943, 951.) Instead, the issue on appeal devolves into one of instructional error.

An instruction that forecloses jury inquiry into an element of the offense and relieves the prosecution from the burden of proving it violates the Fourteenth Amendment. (*Carella v. California* (1989) 491 U.S. 263, 266, 109 S.Ct. 2419, 105 L.Ed.2d 218, 222.) Such an instruction does not require automatic reversal, however. An instruction which misdescribes, omits or presumes an element of an offense is subject to harmless error review under *Chapman v. California* (1967) 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705, 710–711, i.e., whether the error was harmless beyond a reasonable doubt (*Flood, supra,* 18 Cal.4th at p. 499, 76 Cal.Rptr.2d 180, 957 P.2d 869). Stated another way, we must ask whether we can say beyond a reasonable doubt that the error did not contribute to the jury's verdict. (*Flood, supra,* 18 Cal.4th at p. 504, 76 Cal.Rptr.2d 180, 957 P.2d 869, citing *Yates v. Evatt* (1991) 500 U.S. 391, 402–403, 111 S.Ct. 1884, 114 L.Ed.2d 432, 448, *overruled on other grounds* in *Estelle v. McGuire* (1991) 502 U.S. 62, 72, fn. 4, 112 S.Ct. 475, 116 L.Ed.2d 385, 399.)

---

[12] Prior to this instruction, the court twice referred to the special allegation relating to count one as "administering Ambien," not "administering a controlled substance." (footnote in original text)

22

"One situation in which instructional error removing an element of the crime from the jury's consideration has been deemed harmless is where the defendant concedes or admits that element." (*Flood*, supra, 18 Cal.4th at p. 504, 76 Cal.Rptr.2d 180, 957 P.2d 869.)

Here, the jury instruction presuming Ambien was a controlled substance was given without objection and was never the topic of discussion in chambers. At trial, defendant did not dispute that Ambien was a controlled drug. His defense was that he procured a prescription for Ambien for himself, because he had trouble sleeping. In their summations, both attorneys argued their case as if it were a given fact that Ambien was a controlled substance. The prosecutor argued, "There's an enhancement here. And that's for the *administration* of Ambien to commit the crime." (Italics added.) Defense counsel retorted, "She has no proof that at the time of that video [S.] was *given* Ambien." (Italics added.) The record thus establishes that the trial was conducted by the court and all parties as if Ambien's status as a controlled substance was a *presumed* fact.

There is a sound basis for judicially noticing the truth of the fact presumed in the instruction. Judicial notice is commonly taken of well-known medical and scientific facts. (See 1 Witkin, Cal. Evidence (4th ed. 2000) Judicial Notice, § 33, pp. 128–129 (Witkin) [and cases collected therein].) Although "Ambien" is not listed as a controlled substance in the Health and Safety Code section 11057, subdivision (d) provides that controlled substances include "any material, compound, mixture, or preparation which contains any quantity of the following substances, including its salts, isomers, and salts of isomers whenever the existence of those salts, isomers, and salts of isomers is possible within the specific chemical designation: [¶] . . . [¶] (32) Zolpidem."

The Physicians' Desk Reference (PDR) states that "Ambien" is the chemical compound "*zolpidem* tartrate." (Ambien, Physicians' Desk Reference, Prescription Drugs (63d ed. 2009) p. 2692, italics added.)

Judicial notice is a substitute for formal proof of facts. (1 Witkin, supra, Judicial Notice, § 1, p. 102.) Section 452 provides that judicial notice may be taken of "[f]acts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy." (§ 452, subd. (h).) The PDR has been recognized in other jurisdictions as an authoritative source for indisputably accurate information. (See *Commonwealth v. Greco* (Mass.2010) 76 Mass.App.Ct. 296, 301, 921 N.E.2d 1001, 1006; *Kollmorgen v. State Bd. of Med. Examrs.* (Minn.Ct.App.1987) 416 N.W.2d 485, 488; *U.S. v. Dillavou* (S.D.Ohio 2009) 2009 WL 230118; *Wagner v. Roche Labs.* (Ohio 1996) 77 Ohio St.3d 116, 120, fn. 1, 671 N.E.2d 252, 256 ["The PDR is considered an authoritative source for information."].)

23

> An appellate court may take judicial notice of any fact judicially noticeable in the trial court. (Evid.Code, § 459, subd. (a).)[13] Therefore, we take judicial notice, by reference to the PDR, that Ambien contains zolpidem, which is specifically listed as a controlled substance in Health and Safety Code section 11057, subdivision (d)(32).
>
> "The United States Supreme Court has admonished that, '[h]armless-error analysis addresses . . . what is to be done about a trial error that, in theory, may have altered the basis on which the jury decided the case, but in practice clearly had no effect on the outcome.'" (*People v. Harris* (1994) 9 Cal.4th 407, 431, 37 Cal.Rptr.2d 200, 886 P.2d 1193, quoting *Rose v. Clark* (1986) 478 U.S. 570, 582, fn. 11, 106 S.Ct. 3101, 92 L.Ed.2d 460, 473.)
>
> Our review of the trial record, coupled with undisputed facts of which we take judicial notice, convinces us beyond a reasonable doubt the instructional error here played no part in the jury's true finding on the enhancement of administering a controlled substance. Indeed, to overturn a verdict due to the absence of proof of an undisputedly true and judicially noticeable fact would be an abdication of our constitutional duty to reverse only where the error complained of resulted in a miscarriage of justice. (Cal. Const., art. VI, § 13.)

*Gray*, 124 Cal.Rptr.3d at 634-36.

The California Supreme Court denied petitioner's initial petition for review (Resp't's Lod. Doc. 17) on August 24, 2011. Resp't's Lod. Doc. 18. Roughly two years later, the California Supreme Court decided *People v. Davis*, 57 Cal.4th 353 (2013). In *Davis*, the court was tasked with deciding whether a jury could infer that 3,4-methylenedioxymethamphetamine (MDMA) or 'Ecstasy' was a controlled substance based solely on its chemical name, even when the substance was not listed as controlled in the relevant portion of the California Health and Safety Code. *Id.* at 356. The California Supreme Court rejected "the notion that the jury could rely on 'common sense' or 'common knowledge' to infer from its chemical name that MDMA contains some quantity of methamphetamine or amphetamine." *Id.* at 360. It found that the matter was not within the "common knowledge of laymen" and that "it was incumbent on the People to introduce competent evidence or a stipulation about MDMA's chemical structure or effects." *Id.* at 361-62.

---

[13] In a letter requesting supplemental briefing, we informed the parties that we were considering the propriety of taking judicial notice of the PDR entry for Ambien, and afforded them an opportunity to brief the issue. (footnote in original text).

After *Davis* was decided, petitioner filed a motion to reinstate his appeal on the grounds

that *Davis* was intervening law. The following procedural history is taken from a petition for writ

of habeas corpus filed by petitioner with the California Supreme Court on August 5, 2014:

> On July 25, 2013, nearly two years after the remittitur issued, this court decided *People v. Davis* (2013) 57 Cal.4th 353. On November 4, 2013, petitioner filed a motion to recall the remittitur and to reinstate his appeal in Case No. C062668 on the grounds that, after the issuance of the remittitur, intervening new authority, contrary to state law relied upon in the Court of Appeal's opinion, was issued by this court in *Davis*. On November 22, 2013, the Court of Appeal summarily denied the motion.
>
> On December 24, 2103 (*sic*), petitioner filed a petition (Case No. S124988) seeking review of the Court of Appeal's November 22, 2013, order and requesting that this court vacate the order denying the motion and the transfer the matter back to the Court of Appeal to reconsider its decision in light of *Davis*. On February 26, 2014, this court denied review without prejudice to petitioner's right to seek relief by way of petition for writ of habeas corpus citing *In re Harris* (1993) 5 Cal.4th 813, 841.
>
> . . .
>
> On April 1, 2014, petitioner filed an application in the Court of Appeal in Case No. C062668 to expand his appellate counsel's appointment to include the preparation and filing of a petition for writ of habeas corpus; the application was supported by the Declaration of Appellate Counsel Patricia L. Brisbois and also included a copy of this court's February 26, 2014 order.
>
> On April 14, 2014, the Court of Appeal filed an order denying the application to expand appellate counsel's appointment and stated, "In denying the motion to recall remittitur, filed by petitioner on November 4, 2013, we treated it as the equivalent of a petition for writ of habeas corpus. (See *In re Richardson* (2011) 196 Cal.App.4th 647, 663.)" On April 25, 2014, petitioner filed a petition for review in Case No. S218049. On June 25, 2014, this court denied the petition for review "without prejudice to the filing of a petition for writ of habeas corpus in this court on the issue of whether defendant is entitled to relief in light of *People v. Davis* (2013) 57 Cal. 4th 353."

Resp't's Lod. Doc. 23 at 4. As noted above, petitioner then filed a petition for writ of habeas

corpus with the California Supreme Court on August 5, 2014 wherein he again argued that

insufficient evidence supported his five year enhancement for administering a controlled

substance. *Id.* at 10. He argued that *Davis* constituted new, intervening authority which entitled

him to relief on this claim. *Id.* at 12. Petitioner also contended that the court of appeal had

committed legal error and acted in excess of its jurisdiction when it took judicial notice of facts not proven at trial to support Ambien's classification as a controlled substance. *Id.* at 16. On November 18, 2015, the California Supreme Court issued a silent denial. Resp't's Lod. Doc. 24.

Petitioner's claim before this court is that the evidence introduced at his trial is insufficient to support the jury's finding that he administered a controlled substance. Petitioner's allegations of insufficient evidence state a federal habeas claim. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *In re Winship*, 397 U.S. 358, 364 (1970). Petitioner argues that the California Court of Appeal improperly resolved his claim by relying on a theory not raised or briefed by the parties and by failing to address the claim of insufficient evidence actually raised. ECF No. 23 at 16. He contends that the court of appeal's decision is not entitled to deference under AEDPA because it "totally rejected a sufficiency of the evidence analysis and took the tack the CCA itself could supply the missing element." ECF No. 1 at 49. In its earlier findings and recommendations, the court credited this argument and reviewed this claim de novo. ECF No. 37 at 24. The court, based on procedural background articulated *supra*, now recognizes that this acceptance was error and that AEDPA deference should have been applied. Specifically, the procedural history of this claim in the state courts weighs against 'looking through' the California Supreme Court's denial of petitioner's August 2014 habeas petition. The court notes that respondent could not have raised this procedural background in her 2013 answer (ECF No. 15) because the California Supreme Court had not yet invited (June 25, 2014) or denied (November 18, 2015) the relevant habeas petition addressing *People v. Davis.* Resp't's Lod. Docs. 22, 24. Petitioner first raised the potential applicability of the *Davis* case in his December 2013 traverse (ECF No. 23 at 17) and noted that he had filed a petition for review with the California Supreme Court asking it to recall the remittitur and reinstate his appeal on the issue of whether the court of appeal acted properly in taking judicial notice of Ambien's status as a controlled substance. *Id.* This led to the filing of a habeas petition on that issue on August 5, 2014. Resp't's Lod. Doc. 23. In a series of status reports, petitioner indicated that his petition had been submitted (ECF No. 31) and ultimately denied (ECF No. 35). The order inviting the petition, the petition itself, and the order silently denying it were not submitted to this court until February 22, 2017 – the same day

respondent filed her objections to the courts recommendations (ECF No. 44) - when the Clerk of Court acknowledged paper receipt of those lodged documents from respondent.[14]  ECF No. 45. [15] As such, these documents were not available to the court at the time it issued its earlier findings and recommendations in December 2016.  ECF No. 37.

As noted above, this court must look to the last reasoned state court decision as the basis for the state court judgment.  *Stanley*, 633 F.3d at 859.  It is presumed that "[w]hen there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."  *Ylst*, 501 U.S. at 803.  This presumption is, however, rebuttable and can be overcome by strong evidence.  *Kernan v. Hinojosa*, 136 S. Ct. 1603, 1605-1606 (2016).  *Davis* had not yet been decided at the time of the court of appeal's decision.  It makes little sense, then, to conclude that the California Supreme Court invited a habeas petition "on the issue of whether defendant is entitled to relief in light of *People v. Davis*" only to reject it by adopting the exact reasoning of a decision issued before *Davis* was handed down.  *See* Resp't's Lod. Doc. 22.  Even if the California Supreme Court also chose to construe petitioner's claim as one for instructional error, it may be presumed that it considered whether *Davis* altered the trajectory of *that* claim – something the court of appeal was not at liberty to do in 2011.  This 'strong evidence' overcomes the *Ylst* 'look-through' presumption and, therefore, this court interprets the Supreme Court's denial as a free standing decision on the merits which is entitled to AEDPA deference.

"Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, we independently review the record."  *Stanley*, 633 F.3d at 860 (internal

---

[14] The court notes that more than one year passed between the California Supreme Court's rejection of petitioner's last state habeas petition and the issuance of the findings and recommendations in this case.  The question of whether AEDPA deference was owed in weighing petitioner's sufficiency claim was raised in the initial petition.  ECF No. 1 at 48-49.  Respondent could have moved to supplement the record on this issue prior to the issuance of the findings and recommendations.

[15] Although petitioner kept the court informed as to the status of his August 2014 petition, his exhibits took the form of unadorned docket sheets rather than the orders themselves.  See ECF No. 23-1; ECF No. 35-1.

quotations omitted).  Such review is not de novo, "but an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law."  *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000); *see also Richter*, 562 U.S. at 98 (holding that "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning.").  "In such instances the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief."  *Stanley*, 633 F.3d at 860.

### 2. <u>Applicable Legal Standards</u>

#### a. <u>Insufficiency of the Evidence</u>

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  *In re Winship*, 397 U.S. 358, 364 (1970).  There is sufficient evidence to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  *See also Juan H. v. Allen*, 408 F.3d 1262, 1274, 1275 & n. 13 (9th Cir.2005).  "[T]he dispositive question under *Jackson* is 'whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.'"  *Chein v. Shumsky*, 373 F.3d 978, 982 (9th Cir. 2004) (quoting *Jackson*, 443 U.S. at 318).  Put another way, "a reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury."  *Cavazos v. Smith*, ___ U.S. ___, ___, 132 S. Ct. 2, 4 (2011).

In conducting federal habeas review of a claim of insufficiency of the evidence, "all evidence must be considered in the light most favorable to the prosecution."  *Ngo v. Giurbino*, 651 F.3d 1112, 1115 (9th Cir. 2011).  "A petitioner for a federal writ of habeas corpus faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds."  *Juan H.*, 408 F.3d at 1274.  The federal habeas court
/////

determines sufficiency of the evidence in reference to the substantive elements of the criminal

offense as defined by state law. *Jackson*, 443 U.S. at 324 n.16; *Chein*, 373 F.3d at 983.

### b. **Instructional Error**

Challenges to state court jury instructions are generally not cognizable on federal habeas

review because they concern state law. *See Van Pilon v. Reed*, 799 F.2d 1332, 1342 (9th Cir.

1986) ("Claims that merely challenge the correctness of jury instructions under state law cannot

reasonably be construed to allege a deprivation of federal rights."). A petitioner may obtain

federal habeas relief for an erroneous state court jury instruction only where "the ailing

instruction by itself so infected the entire trial that the resulting conviction violates due process."

*Estelle*, 502 U.S. at 72 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). The Supreme

Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly."

*Id*. at 72-73.

Where a reviewing state court determines that an error was harmless pursuant to the

standard set out by *Chapman v. California*, 386 U.S. 18 (1967), a federal court "may not award

habeas relief under §2254 unless *the harmlessness determination itself* was unreasonable." *Davis

v. Ayala*, 135 S. Ct. 2187, 2199 (2015) (emphasis in original). To show that the determination

was unreasonable, petitioner must demonstrate that it "was so lacking in justification that there

was an error well understood and comprehended in existing law beyond any possibility of

fairminded disagreement." *Id*. (internal quotation marks omitted).

### 3. **Analysis**

Based on the foregoing, the court must review this claim through the lens of AEDPA.

Accordingly, relief is warranted only if the state court's adjudication "resulted in a decision that

was contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States; or (2) resulted in a decision that was based

on an unreasonable determination of the facts in light of the evidence presented in the State court

proceeding." 28 U.S.C. § 2254(d). Given that the California Supreme Court's silent decision is

entitled to deference, the court will begin by analyzing the grounds on which the court of appeal

based its denial of petitioner's claim. Presumably the California Supreme Court could have based

its denial on similar grounds after considering *Davis*. Then, the court will consider whether any other reasonable basis existed on which the California Supreme Court could have denied this claim.

The court of appeal's decision to summarily reject petitioner's sufficiency of the evidence claim and, instead, recast it as an instructional error is deeply troubling. The former, unlike the latter, is not subject to a harmless error analysis. *See Jensen v. Clements*, 800 F.3d 892, 902 (7th Cir. 2015) ("Time and again, the Supreme Court has emphasized that a harmless-error inquiry is not the same as a review for whether there was sufficient evidence at trial to support a verdict."). Instead, in evaluating the sufficiency of the evidence, a reviewing court must grant habeas relief if "all rational fact finders would have to conclude that the evidence of guilt fails to establish every element of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Under that standard, petitioner would have prevailed on this claim insofar as it was undisputed that no evidence whatsoever was presented on the question of whether Ambien qualified as a controlled substance.

The Supreme Court has emphasized that sufficiency review addresses "whether the government's case was so lacking that it should not have even been *submitted* to the jury." *Burks v. United States*, 437 U.S. 1, 16 (1978) (emphasis in original). In *Jackson*, the Supreme Court held that "the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." 443 U.S. at 319. And, more recently, the Supreme Court confirmed these earlier holdings, noting that "[a]ll that a defendant is entitled to on a sufficiency challenge is for the court to make a 'legal' determination whether the evidence was strong enough to reach a jury at all." *Musacchio v. United States*, 136 S. Ct. 709, 715 (2016). Thus, whether the jury was properly instructed or not, petitioner was entitled to a determination as to whether any rational finder of fact could have found, based on the evidence at trial, that Ambien was a controlled substance under California law. *See id.* ("A reviewing court's limited determination on

/////

30

sufficiency review thus does not rest on how the jury was instructed.").  Given that no evidence was submitted on this point, the court concludes that no rational finder of fact could have done so.

This court also finds that, even if the recasting of petitioner's claim was proper, he would still be entitled to relief.  The trial court instructed jurors that:

> If you find the defendant guilty of the crime charged in Count 1, you must then decide whether the People have proved the additional allegation that the defendant administered a controlled substance to [the victim] during the commission of that crime.
>
> To prove this allegation, the People must prove that:
>
> (1) In the commission of sex penetration with a foreign object when victim was unconscious, the defendant administered Ambien to [the victim];
>
> AND
>
> (2) The defendant did so for the purpose of committing the crime of sex penetration with a foreign object when victim was unconscious.

Resp't's Lod. Doc. 2 (Clerk's Transcript Vol. 2) at 443.  The only logical reading of this instruction demands that Ambien be categorized 'a controlled substance.'  The trial court's instruction automatically equating Ambien with a controlled substance was clearly error.  *See Hennessy v. Goldsmith*, 929 F.2d 511, 514 (9th Cir. 1991) ("Failure to properly instruct the jury regarding an element of the charged crime is a constitutional error that deprives the defendant of due process. . . .").  And such error is subject to the harmless error analysis.  *See Neder v. United States*, 527 U.S. 1, 10 (1999).  The harmless error analysis applies even where an instruction impermissibly shifts the burden of proof on an element of the crime.  *See Rose v. Clark*, 478 U.S. 570, 580 (1986) (holding that "an instruction that impermissibly shifted the burden of proof on malice -- is not 'so basic to a fair trial' that it can never be harmless.").[16]  "[T]he test for determining whether a constitutional error is harmless . . . is whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained."  *Neder*, 527 U.S. at 15.

---

[16] The court notes that the Supreme Court's decision in *Rose* did not explicitly decide whether the error in that case was actually harmless; it remanded that question to the Court of Appeals.  478 U.S. at 584.

31

The court of appeal concluded that the error in this case was harmless because defendant had conceded or admitted that Ambien was a controlled substance by failing to factor that issue into his theory of the case in any way. *Gray*, 124 Cal.Rptr.3d at 635. The court of appeal emphasized that both parties argued the case as if Ambien's status as a controlled substance was a presumed fact. *Id.* The United States Supreme Court has held that an instructional omission may be deemed harmless in situations where the omission relates to an element of the crime which the defendant admitted. *See Connecticut v. Johnson*, 460 U.S. 73, 87 (1983) (holding that, where instructions erroneously took the question of intent away from the jury, such error would be harmless "if the defendant conceded the issue of intent."); *see also Carella v. California*, 491 U.S. 263, 270 (1989) (noting that a conclusive presumption could be harmless "with regard to an element of the crime that the defendant in any case admitted.") (conc. op. of Scalia, J.). The problem presented here is that the record does not support a conclusion that petitioner conceded the element of the offense at issue.

The petitioner never explicitly admitted or stipulated to the fact that Ambien was a controlled substance. Nor did the defense theory of the case which the state court identified – that petitioner had procured Ambien because he had trouble sleeping - implicitly admit Ambien's status as a controlled substance. To be sure, petitioner's counsel failed to address this question directly, either by raising the issue at trial or by objecting to the trial court's erroneous instruction. But it was the burden of the prosecution, not the defense, to address the issue and present evidence to prove this element. It was not defense counsel's obligation to prove that Ambien was not a controlled substance; it was the prosecution's burden to prove that it *was*. Absent some admission of this element on the part of petitioner, the state court's reasoning amounts to an unconstitutional shifting of the burden of proof. *See In re Winship*, 397 U.S. 358, 362 (1970) ("[I]t is the duty of the Government to establish . . . guilt beyond a reasonable doubt. This notion -- basic in our law and rightly one of the boasts of a free society -- is a requirement and a safeguard of due process of law in the historic, procedural content of 'due process.'") (internal quotation marks omitted)(citing *Leland v. Oregon*, 343 U.S. 790, 803 (1952) (dis. op. of Frankfurter, J.). The record in this case does not demonstrate an admission, but rather a tripartite

mistake on the part of the defense, the prosecution, and the trial court.  It is apparent that none recognized the necessity of presenting actual evidence to prove this element.  Given that the prosecution bore the responsibility of establishing this element beyond a reasonable doubt, however, it seems fundamentally incompatible with due process to punish the defendant for the state's omission.  To do so would, for all practical purposes, misplace the burden of proof and hold defense counsel to a higher standard of performance than the prosecution.  Failure to recognize the necessity of proving an essential element could be deemed 'admission' for the former and, as occurred in this case at least, a happy mistake for the latter.

Next, the court finds that the decision to take judicial notice of the fact that Ambien contains zolpidem was inconsistent with the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000).  *Apprendi* stands for the proposition that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  *Id.* at 490. *Apprendi* applies to enhancements like the one at issue here:

> "Merely using the label 'sentence enhancement' to describe the [second act] surely does not provide a principled basis for treating [the two acts] differently."  *Apprendi*, 530 U.S. at 476.

> The dispositive question, we said, "is one not of form, but of effect."  *Id.*, at 494. If a State makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact—no matter how the State labels it—must be found by a jury beyond a reasonable doubt. *See id.* at 482-483. A defendant may not be "expose [d] . . . to a penalty exceeding the maximum he would receive if punished according to the facts reflected in the jury verdict alone." *Id.* at 483.

*Ring v. Arizona*, 536 U.S. 584, 602 (2002) (citations altered for clarity).  Respondent contends that any *Apprendi* error is harmless because "[t]he evidence that Ambien is a controlled substance was uncontested and overwhelming."  ECF No. 15 at 44.  The court disagrees.  It may be apparent from various sources – like the Physicians' Desk Reference which the court of appeal referred to in this case – that Ambien and zolpidem are equivalent.  None of those sources were presented to the jury in this case, however, and it cannot be concluded that they decided this issue

beyond a reasonable doubt. Indeed, as the court of appeal found, they were precluded from considering this issue at all.

In light of the finding that the California Supreme Court's 2014 silent denial of petitioner's habeas petition was a free standing decision entitled to deference, this court must determine whether there is any other reasonable basis on which to deny relief on this claim. *See Himes*, 336 F.3d at 853. This requires that the court "vigilantly search for an interpretation of the state law question which would avoid attributing constitutional error to the state court. But we stop short of adopting an implausible or strained interpretation." *Id.* at 854. The court, after careful consideration, concludes that there was no other reasonable basis for denying this claim.

**IV. Conclusion**

For the foregoing reasons, it is ORDERED that the findings and recommendations issued on December 20, 2016 (ECF No. 37) are VACATED.

Further, it is RECOMMENDED that petitioner's application for a writ of habeas corpus be granted on petitioner's claim that the evidence is insufficient to support the jury's true finding on the enhancement allegation under Cal. Penal Code § 12022.75. The petition should be denied in all other respects. Subject to the following exception, proceedings in state court leading to retrial on the enhancement allegation should be commenced within 60 days from any order adopting this recommendation. However, if either party appeals the judgment in this case, no criminal proceedings should be required to commence until 60 days after the issuance of the mandate following a final appellate decision or the denial of a petition for writ of certiorari, whichever occurs later.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order.

1    *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir.

2    1991). In his objections petitioner may address whether a certificate of appealability should issue

3    in the event he files an appeal of the judgment in this case. *See* Rule 11, Federal Rules Governing

4    Section 2254 Cases (the district court must issue or deny a certificate of appealability when it

5    enters a final order adverse to the applicant).

6    DATED: September 13, 2017.

7                   EDMUND F. BRENNAN

8                   UNITED STATES MAGISTRATE JUDGE